The opinion of the court was delivered by
Fenner, J.
This is a proceeding to compel compliance'by the adjudicatee with an adjudication made of certain property sold at pub-lie'auction under an order of court in this succession.
The defence is:
“That neither the deceased nor her succession was owner of the whole of said property; that said property was purchased from the heirs of J. Waterman and wife by act of A. Hero, notary, dated April 8, 1876, in the name of Emma Frayser, wife of Robert N. Lewis; that said property was therefore owned by the community existing between the said Emma Frayser and her said husband, Robert N. Lewis, and that it could be sold only by him or in his succession, and was liable for the payment of his debts; that the said R. N. Lewis died on March 31, 1886, leaving three minor children, and debts exceeding in value the amount of the assets, as appears by record No. 17,608 of the Civil District Court.”
After a careful study of the evidence in the record we find no reason to disturb the finding of facts as made by the careful judge a quo, which he states as follows:
“Mrs. Emma F. Lewis, then the wife of Robert N. Lewis, acquired the property sold, 185 St. Charles street, on April 8, 1876. There was no separation of property; the community of acquets and gains existed between her and her husband, Robert N. Lewis; the act recites that she purchased with her own separate and paraphernal funds, derived, as she declared, from her father, Dr. John A. Frayser, of Memphis, Tenn.; the purchase price was $9800, of which $2450 was paid cash, the balance on terms of credit, secured by vendor’s lien, and evidenced by thirty notes. Mrs. Lewis, at the time of the purchase, received from her father $2500, and subsequently, for the purpose of paying the mortgage notes, $1400; her father and husband were both at that time wealthy. It was clearly the intention of Mrs. Lewis to acquire a .home, and thus provide against her husband’s future financial embarrassment.
*836 “ Mrs. Lewis and her husband lived in the house from 1876 to about 1883.
“ In 1882, Robert N. Lewis failed. On May 22, 1883, he took the-benefit of the insolvent laws of this State, and was adjudicated, in suit No. 8653 of this court, an insolvent. The property sold herein was never included or mentioned in the insolvent proceedings. On the 29th of March, 1886, Lewis died. His succession was opened in this court and numbered 17,608. The property in controversy was not inventoried or referred to in the succession proceedings. His succession was insolvent.
“On the 22d of February, 1892, Mrs. Lewis died. From 1884 to the date of her death the property, with the furniture therein, was-rented by Mrs. Lewis, individually, or by her agents, for her account. It was rented at $125 per month from 1884 to 1891, and after 1891 at-$80 per month; Mrs. Lewis collected the rents herself, or they were remitted to her by her agent; the property was always assessed and the taxes paid in her name. Up to the time of her death, mortgage-notes amounting to $3879.17, and the interest thereon, were paid; twelve notes amounting to $3470.83 are due and unpaid. There is-no positive testimony as to who paid the notes, but the court is satisfied that they were not paid by the bankrupt husband, and concludes from the circumstances of this case and the presumption arising from the facts disclosed, that they were paid, as well as the purchase price, by the wife out of the money received from her-father and the revenues of the property.”
On these facts the judge maintained the wife’s title, and the adjudicatee has appealed.
We are not disposed to depart from orto extend the rules carefully-formulated by us in the case of Miller vs. Handy, as follows:
“ It is difficult to lay down precise rules as to the limits within which, the wife’s liberty to purchase on credit should be restricted, but we think the following general propositions are reasonable, viz.:
“1. It should be regarded as essential that the wife should have-some paraphernal funds to invest, because such investment is the-foundation of her right to purchase.
“2. The cash so invested should bear such fair proportion to the total price of the purchase as to render it reasonably certain that the property purchased would furnish sufficient security for the credit portion of the price.
*837 “ 8. The wife’s paraphernal property and revenues should be ample to enable her to make the acquisition, with the reasonable expectation of being able to meet the deferred payments.” Miller vs. Handy, 33 An. 160.
The two first rules are fully complied with in this case; but it must be confessed that the evidence would hardly be sufficient, under ordinary circumstances, to establish compliance with the third rule. But the circumstances in this case are unusual and extraordinary. We are confronted with the facts that Mrs. Lewis has actually paid about two-thirds of the price of this property, besides all the accruing interest, taxes and expenses; that she purchased it in her own name and as an investment of paraphernal funds under her own administration; that she has held and administered the property in her own right, under a title never questioned, for more than sixteen years; that when her husband went into insolvency, this property was not placed on his schedule and no creditor ever complained of its omission; that when her husband died, this property was not included in the inventory of his estate and no creditor, objected; that six years after his death she has held and administered the property as her own, without question from any source; and that it is only after her death, when her lips are sealed, which might fully have justified her right, that this issue is, for the first time, raised — not by any creditor or heir, but by an adjudicatee who anticipates an improbable and, we think, an impossible disturbance of the title.
So far as the heirs of R. N. Lewis are concerned, they are the three children of his marriage with Mrs. E'. T. Lewis, and are her sole heirs and sole testamentary legatees, and are obviously interested in maintaining her title.
So far as his creditors are concerned, if, after this lapse of time, any such remain, we think that, considering their laches and long acquiescence, up to the death of Mrs. Lewis, the rigidity of proof ordinarily required in support of a wife’s title would be so far relaxed that the evidence contained in this record would suffice to destroy any attack which they could make upon it. We may add that, even if the property were held to be in the succession of R. N. Lewis, the unpaid mortgage and the satisfaction of Mrs. Lewis’ paraphernal claims would about absorb its value.
On the whole, we see no reason to disturb the judgment.
Judgment affirmed.