ROGERS, Justice.
 

 This is a suit instituted by Mrs. Estelle McGehee Byrd, wife of W. T. Byrd, against Louis U. Babin and John T. Lay-cock to recover a certain sum of money which she alleges is due her as her share of the profits realized from the sale of her separate property.
 

 Plaintiff, as owner of a tract of land situated near the City of Baton Rouge, entered into a contract with defendants to sell them the land for $27,500, plus one half of the profits which might result from the sale of lots into which this tract was to be subdivided by the defendants.
 

 The plaintiff, Mrs. Byrd, is a married woman living with her husband under the regime of the community, and the defendants excepted to her capacity to sue on the ground that the amount she seeks to recover is a community debt and not her individual debt, and therefore the suit should have been brought by her husband as master of the community. The exception was sustained by the district court, but, on appeal, was overruled by this Court and the case remanded for further proceedings. Byrd v. Babin, 181 La. 466, 159 So. 718.
 

 After the case was remanded to the district court, the defendants filed exceptions of vagueness and of no cause or right of action, and, in the alternative, of partial lack of cause or right of action. The exception of vagueness was overruled. The exception of no cause or right of action was partially overruled and partially sustained.
 

 Prior to the trial of the case, John T. Laycock, one of the defendants, was adjudged a voluntary bankrupt and, upon
 
 *907
 
 proper motion, was eliminated from the case. His trustee, B. E. Perkins, was made a party to the suit and defended it as such.
 

 The trial on the merits resulted in a judgment in favor of plaintiff and against the defendants jointly in the sum of $3,-646.71, with interest and costs. Louis U. B.abin, one of the defendants, appealed. B. E. Perkins, trustee in bankruptcy of John T. Laycock, did not appeal, nor did Mrs. Byrd, the plaintiff, appeal.
 

 Plaintiff has answered the appeal, asking to have the judgment amended by increasing the amount awarded her to $6,-650.48, and by changing the judgment from a joint to a solidary one. Plaintiff has also filed a plea of estoppel in this Court, alleging that appellant is estopped to contend that the property in dispute is not shown to be the separate property of appellee and that the allegations of her petition are insufficient to allow proof as to its paraphernal character. Louis U. Babin, defendant and appellant, has filed a motion to dismiss plaintiff’s suit if the Court should, in answer to plaintiff’s prayer, amend the judgment so far as to make it solidary instead of joint. Appellant avers that if the obligation sued on is solidary plaintiff has, without reservation, remitted her claim as to appellant’s co-defendant, except to the. extent of the joint judgment, and accordingly has released appellant from any obligation to her.
 

 The appeal presents for review not only the judgment on the merits, but also certain preliminary rulings of the trial judge.
 

 The appellant excepted to plaintiff’s petition on the ground that it fails to disclose with what funds she acquired her alleged paraphernal property, and also on the further ground that it fails to set forth the facts and details upon which she bases her claim for a share of the interest and revenues collected by defendants from the lots and parcels of land sold by them. The exception was overruled and appellant complains of the ruling. Appellant’s complaint is not well founded.
 

 Appellant and his co-defendant, who has not appealed, prayed for oyer of plaintiff’s titles and that she be compelled to produce and file them in Court within ten days, in default of which, that her suit be dismissed. The prayer for oyer was granted by the trial judge. In compliance with his order, plaintiff produced and filed in court certified copies of the two deeds under which she acquired the property. In both deeds it is disclosed that plaintiff purchased the property “with her separate, paraphernal funds, under her separate management and control,” and that plaintiff’s husband, W. T. Byrd, appeared and signed to authorize his wife. Plaintiff’s petition shows that in the transaction in which defendants acquired the property from plaintiff, her husband again appeared for the purpose of authorizing his .wife. In the sale from plaintiff to defendants, the property was described as being the same property that plaintiff acquired in the deeds produced and filed by her in response to the prayer and order of oyer. In these instruments, the paraphernal character of the property conveyed to defendants was specifically declared, which declaration was consented to by plaintiff’s husband who also joined in
 
 *909
 
 this suit for the purpose of aiding his wife. The appellee has filed in this Court a plea of estoppel, based on these facts.
 

 We do not see how appellant can pretend ignorance of plaintiff’s title, since, as shown by the allegations of the petition and the documents produced and filed by plaintiff in response to the prayer and order for oyer, appellant’s title is itself predicated on plaintiff’s title. By now claiming that the property acquired by him and his co-defendant, who has not appealed, was not plaintiff’s separate and paraphernal property, appellant is directly attacking his own title.
 

 So far as plaintiff’s claim for interest, rents, and revenues is concerned, the nature and amount of the claim are set forth and the period within which they are alleged to have been collected by defendants is given, viz., up to the 15th day of June, 1930. The failure to give further particulars is clearly due to the fact that those particulars were in the possession of the defendants who suffered no disadvantage because the details of plaintiff’s claim were not more fully stated. If well founded plaintiff’s demand is not beyond relief. The defendants, and not the plaintiff, kept the books and records of their transaction.
 

 The exception of no cause or right of action, filed alternatively after the exception of vagueness was overruled, was leveled not only at the entire petition generally, but also specifically at plaintiff’s demand for rents and revenues, interest collected, one-half interest in the unsold property, and for a solidary judgment against defendants.
 

 The trial judge overruled the exception so far as it was leveled at the entire petition and so far as it related to the rents, revenues, and interest received from the property, but he sustained the exception so far as it related to the demand for a one-half interest in the property remaining unsold. The question as to whether the obligation sued on is joint or solidary was referred to the merits.
 

 On the merits, the defendants reaffirmed their contention raised on the exception, filed in limine, that plaintiff was without right to institute the suit, and they also objected on the same grounds to the introduction of evidence. At the termination of the trial, the defendants again urged their exception and argued it orally to the trial judge. The exception was again overruled, and appellant now asljs this.Court to revise the rulings of the trial judge and to dismiss the suit. We can not accede to appellant’s request. There was no error in the rulings of the trial judge.
 

 From the evidence produced on the trial of the case, the trial judge found as a fact that the plaintiff, while a resident of the State of Mississippi, had conducted a business of her own and had earned and saved a considerable sum of money, which was her individual property under the laws of Mississippi, and that she had used this money to purchase the tract of land sold to the defendants.
 

 In oral argument and in brief, the appellant complains that this finding of the trial judge is not borne out by the record. The
 
 *911
 
 testimony of both plaintiff and her husband is not disputed that, in purchasing the property sold to the defendants, plaintiff paid approximately one half of the purchase price from the proceeds derived from her' separate property, and that the remainder of the purchase price was derived from mortgages given upon the property, which mortgages were assumed and paid by the defendants when they acquired the property from plaintiff.
 

 In the contract between the plaintiff and the defendants, and in the subsequent sale of plaintiff’s property to defendants, plaintiff acted in her individual capacity and her husband appeared in the transaction solely for the purpose of authorizing his wife to act. The defendants, with the consent of plaintiff’s husband, treated and dealt with plaintiff as the separate owner of the property involved in their transaction. It would be a wholly inequitable rule which would permit defendants to escape liability, if any exists, under such circumstances.
 

 Plaintiff’s husband not only expressly gave his consent to the contract and sale entered into by plaintiff and defendants, but he also expressly consented to plaintiff instituting and prosecuting this suit. He appeared at the trial and testified as a witness on behalf of his wife. Any judgment that may be rendered against the defendants in this case would clearly estop plaintiff’s husband from the prosecution of another suit on the same cause of action, and thus the defendants should be free of apprehension on that account.
 

 So far as the facts are concerned, we concur with the finding of the trial judge that the property sold to defendants was the separate property of plaintiff and not the property of the matrimonial community.
 

 We do not know of any law, nor have we been referred to any, holding that a wife having sufficient paraphernal means to make a purchase, is debarred from availing herself of the usual terms of credit, or forfeits her right by accepting such terms. On the contrary, our attention is directed by counsel for plaintiff to several cases in which the wife’s title was protected-where she had purchased property partly for cash and partly on credit, on showing that the cash paid was paraphernal, and that she had paraphernal means to meet the credit installments. Miller v. Handy, 33 La.Ann. 160; Succession of Lewis, 45 La.Ann. 833, 12 So. 952.
 

 Plaintiff’s title to the property is not questioned by any creditor or by any heir, but only by the purchasers of the property from plaintiff, who, by the very fact of their purchase, have recognized and ratified the status of the property as plaintiff’s separate and paraphernal property, under her separate administration and control.
 

 In order to appreciate the issues involved on the merits, it is necessary to consider the terms and conditions of the transaction between the parties. We note the facts.
 

 On August 1, 1919, Mrs. Byrd, the plaintiff, authorized by her husband, entered into a written agreement whereby she bound herself to sell to Louis U. Babin and John T. Laycock, the defendants, a certain undeveloped tract of land situated in the Parish of East Baton Rouge. This tract of
 
 *913
 
 land was the separate property of Mrs. Byrd, under her separate administration and control, and she agreed to sell it to Ba-bin and Laycock, subject to certain stipulations and conditions. The consideration agreed on by the parties was to be, first, $27,500, in payment whereof Babin and Laycock, the proposed purchasers, agreed to assume and pay a mortgage note of $15,-000 executed by Mrs. Byrd on May 1, 1919, and for the balance of $12,500, they agreed to execute their note, secured by mortgage and vendor’s lien on the property which was to be conveyed to them. Babin and Laycock also obligated themselves to acquire a ten-acre tract of land known as the Bernard Grove tract, adjoining plaintiff’s property, at a price not to exceed $12,-500. Babin and Laycock further bound themselves to subdivide both tracts into lots and acres and to sell them. It was expressly agreed between the contracting parties that after the total indebtedness for $27,500, consisting of the $15,000 and $12,-500 items, had been paid with all interest, together with the purchase price and interest, of the Bernard Grove property, and after deducting fifteen per cent of the purchase price on all land sold to pay Babin and Laycock for developing and selling the subdivision, the proceeds derived from the sales were to be divided equally between the parties of the first and second part, that is to say, Mrs. Byrd was to receive one half and Babin and Laycock were to receive the remaining one half.
 

 Subsequent to the execution of the agreement and in accordance with the conditions imposed upon them, Babin and Laycock acquired the Bernard Grove property and thereafter Mrs. Byrd sold them the tract of land owned by her. The consideration expressed in the sale was $27,500, which amount defendants discharged by their assumption of the pre-existing mortgage note for $15,000 and by executing for the balance of the purchase price their mortgage note for $12,500. Simultaneously with the execution of the act of sale, the parties executed a .counter-letter, which was attached to the original contract, in which it was declared that all the conditions of the prior written agreement were to remain in full force and effect between the parties, and that the only reason for omitting some of those conditions from the act of sale was to vest in defendants a title under which the properties could be developed and sold without any restraint.
 

 The Bernard Grove tract was purchased by Babin and Laycock for $12,500 and sold for $16,500, or at a profit of $3,502, after deducting the agreed commission.
 

 In the year 1925, the defendants sold to the School Board for the Parish of East Baton Rouge, for a consideration of $8,000, eight acres out of the tract they were developing.
 

 On December 27, 1926, John T. Laycock and Louis U. Babin sold to Mrs. Estelle McGehee, authorized by her husband, for a recited consideration of $10,000 cash, twenty-five lots of ground out of the subdivision they had established.
 

 During the period in which the subdivision was being developed and sold, Mrs. Byrd received the sum of $13,200 out of
 
 *915
 
 the profits arising from the transaction. Plaintiff in her suit alleges that defendants failed to account to her for her one half of the net' proceeds of the sales and that defendants are indebted to her, in solido, in the specific sum of $8,781.31 as the alleged balance due.
 

 . Plaintiff further alleges that defendants ceased to develop and sell the remainder of the property, amounting to approximately twenty-three acres, and that in view of the depression and unfavorable economic conditions making further profitable operation under the agreement impracticable, she is entitled to terminate the agreement and to a judgment against defendants, severally and in solido, for the sums collected and held by them for her account and to a judgment recognizing her as owner of one half of the remainder of the property.
 

 In addition to the issue of lack of capacity on the part of Mrs. Byrd, plaintiff, to stand in judgment, which we have 'disposed of, the case on its merits involves the following questions: First, whether the plaintiff is responsible for one half of the expenses incurred by defendants in making certain improvements required to effect the sale to the school board; second, whether the parties, by an alleged partition of certain lots on December 27, 1926, settled the indebtedness and all matters in controversy between them; third, whether defendants are liable for the rents and revenues derived and interest collected by them from the property; and fourth, whether defendants’ obligation under their contract is joint or solidary. We shall consider these questions in the order of their’ statement.
 

 (1) Defendants alleged in their answer that, in the year 1925, defendants and W. T. Byrd, with the knowledge and consent of Mrs. Byrd, interested the School Board of East Baton Rouge Parish in purchasing certain acreage in the Bernard Terrace Tract, which was the name given to the tract defendants were developing. That in order to procure a more desirable price from the school board, it was necessary to make extensive improvements to the property, and that with the consent of' Mr. and Mrs. Byrd and with their knowledge and approval, defendants made the required improvements at a total cost of $4,686.18, which it was agreed and understood ‘‘the Byrds” were to pay one half and defendants the other one half. That the work performed so improved the property as to make it possible to effect the sale to the school board for $8,000 for eight acres, and to make a large number of lots valuable for sale, which otherwise would have been a total loss.
 

 On objection by plaintiff, the trial judge excluded all testimony offered to prove these allegations, on the ground that such testimony would have the effect of altering or modifying the written contract. Defendants do not contend that the deduction of $4,686.18 that they claim for additional expenses incurred in connection with' the sale of the property to the school board is covered by the provisions of their contract. Defendants’ claim is predicated on an alleged subsequent oral understanding had
 
 *917
 
 between them and plaintiff’s husband, acting without any written authority to represent plaintiff in the management of her property.
 

 Numerous cases are cited on behalf of defendants sustaining the rule that subsequent and new agreements between the parties modifying the original contract may be shown by parol. But the rule is not applicable to a case like this where the allegations are so vague and incomplete. Defendants, in their answer, simply aver that the improvements were extraordinary and cost $4,686.18, which expense was to be shared by plaintiff, without showing, except in the most general terms, why the expense was necessary and what the improvements were and without any specific showing that Mrs. Byrd actually agreed to the transaction. Defendants’ allegation is in part “that while the negotiations were conducted largely with Mr. Byrd, Mrs. Byrd had full knowledge of what was transpiring and saw the work going on and not only did not object thereto but approved of same.” There is nothing in this allegation as to how Mrs. Byrd acquired knowledge of what was transpiring, nor as to how her alleged approval to the transaction was given. The testimony in the record shows that Mr. Byrd acted rather as the agent of defendants than as the agent of his wife. From the inception of the project, he was employed by defendants to sell lots. There is no proof m the record that Mr. Byrd ever acted as the agent of his wife either prior or subsequent to the time she sold her property to the defendants.
 

 We do not think that the rulé permitting a written contract to be'altered or modified by a subsequent parol agreement can be successfully invoked, unless the alleged subsequent parol agreement is clearly defined and unless it be shown that the party sought to be held actually agreed to or authorized the subsequent contract. Where the allegations of an answer are insufficient to allow proof, it is proper for the plaintiff to object to any testimony thereon. Plaintiff did 'this, and we think the ruling of the court sustaining her objection was correct.
 

 (2) During the trial of the case, defendants offered to introduce parol evidence to show that, in December, 1926, the parties adjusted all matters in controversy between them by making a partition of fifty of the lots in the subdivision, plaintiff receiving twenty-five and the defendants receiving twenty-five. The only written instrument offered in evidence in connection with defendants’ contention was the cash deed to plaintiff of the twenty-five lots that were conveyed to her.
 

 Plaintiff objected to this evidence on the ground that the act of sale executed on December 27, 1926, from defendants to plaintiff was the best evidence of the intention of the parties. Plaintiff’s objection was sustained. Notwithstanding the ruling .of the court, the record discloses that testimony was admitted showing that the defendants, as well as the plaintiff received twenty-five lots. The transaction on its face shows nothing more than two sales
 
 *919
 
 made for a consideration of $10,000 cash in each instance. There is nothing either in the act of sale that was offered in evidence, or the testimony adduced concerning the alleged partition to show or suggest that the transaction was intended to be a final settlement between the parties. No accounting was given or rendered to plaintiff. In fact, the account between the parties was not actually closed, since other undeveloped property was thereafter held by defendants under the contract, even up to the time this suit was actually filed. Some five years later, upon her insistence, plaintiff received a statement from defendants purporting to show the status of the account between them. This statement did' not contain any reference to the division of lots made in December, in 1926. No objection was made that plaintiff was not entitled to an accounting as would be the case if plaintiff had been settled with five years before.
 

 The evident purpose of the parties in executing the cash sales on December 27, 1926, was to dispose of the improved lots on hand at that time. Appellant’s attempt to give those sales the legal effect of a final settlement between the parties cati not prevail.
 

 (3) Plaintiff, in her answer to the appeal, complains that the trial judge erred in excluding from the amount due her the sum 'of $575 representing rent collected by defendants from repossessed property, and $5,032.54, representing interest collected by defendants on deferred payments on property sold. The trial judge, in refusing to allow these items, sustained defendants’ contention that plaintiff was entitled only to the profits derived from the proceeds of the actual sales of the property. The contract between the parties expressly provides that after the total indebtedness of $27,-500 and interest thereon, as well as the purchase price with interest of the Bernard Grove property, has been paid, and after 15% of the purchase price for all land sold shall be deducted for commissions and other expenses, the balance is to be divided equally between Mrs. Byrd, on the one hand, and Laycock and Babin on the other. There is nothing in the contract to indicate that any rent received from the property, or any interest on deferred payments was to be divided between the parties. The purchase price of property does not include interest that subsequently accrues. In all sales of real estate, the purchase price is definitely fixed. If the sale is made on credit, the property is not assessed upon the basis of the purchase price plus the interest the vendor receives, nor is such interest included in the margin of profit for the purpose of fixing the income. This interest falls into a separate and distinct category. The record in this case discloses that whenever Laycock and Babin sold a piece of property on credit and the purchaser. defaulted and they subsequently re-acquired the property, they nevertheless became responsible to Mrs. Byrd for the original purchase price, after allowing the deductions agreed upon by the parties.
 

 A real estate dealer is entitled to a fixed commission on the purchase price of the property he sells. He collects his commis
 
 *921
 
 sion even though the sale be made on credit and whether the purchase price is paid or not. He receives nothing whatever on the interest on deferred payments. In short, the purchase price is the price agreed upon by the parties as a consideration for which the property is sold and purchased. As the purchasers of the property from the plaintiff, Mrs. ■ Byrd, the defendants, Laycock and Babin, paid all taxes on the property subsequent to the year 1919, and they also paid interest on the mortgage loans they assumed and on money which they borrowed. Laycock and Babin paid almost $6,000 for taxes and interest. They were obliged to maintain the property by paying the taxes, and they were obliged to improve the property as stipulated in their contract. They were also obliged to account to Mrs. Byrd for the purchase price of every piece of property the moment they made the sale. The record discloses that Mrs. Byrd’s mortgages were promptly discharged and that she soon began to receive dividends which amounted, in the course of time, to $13,200.
 

 An auditor’s report offered in evidence, which apparently was accepted by the parties as correct, shows that the gross receipts of defendants from the sales of property amounted to $86,301.68. This included $69,801.68 derived from sales in the property acquired from plaintiff, and $16,500 derived from, the sale of the Bernard Grove property. In addition to this, defendants received $575 for rent, $182.50 from the sale of old houses and $5,032154 as interest on deferred payments.
 

 We think that the trial judge was correct in refusing to'allow plaintiff any recovery for the rent collected and for the interest on the deferred payments. If plaintiff be recognized, as she was, as being entitled to one half of the purchase price received for all the property sold, after allowing for the agreed deductions, we fail to see how she has any claim to the rents and revenues derived by defendants from the property that may have been repossessed by them.
 

 As shown by the auditor’s report to which we have referred, the gross amount received by defendants from the sales out of the property acquired by them from plaintiff was $69,801.68, and the amount received by defendants from the sale of old houses was $182.50, or a total of $69,OSA-IS. From that amount is to be deducted 15% of $69,801.68 for commissions and improvements, or $10,470.25. The $15,000 mortgage note of Mrs. Byrd, assumed by defendants, and the mortgage note of $12,-500 given her by defendants as part of the purchase price, together with $1,823.50 interest paid on the notes, show a total of allowable deductions of $39,792.75; thus leaving to be divided between plaintiff and defendants one-half to each, $30,191.43. Of this amount plaintiff’s share is $15,095.71. Plaintiff has previously received $13,200 in dividends, leaving a balance due her from the sale of lots out of the tract sold by her of $1,895.71. To this must be added $1,-751 as plaintiff’s share of the profits made froiii .the sale of the Bernard Grove Tract. The balance due plaintiff on both transac
 
 *923
 
 tions is $3,646.71, which is the amount awarded plaintiff in the judgment of the district court.
 

 Defendants, however, complain that the trial judge failed to allow them 15% upon $20,000, representing the value of 50 lots involved in the two sales executed by the parties on December 27, 1926. Defendants argue that as these lots were improved by'them they are entitled to 15% of their value for commissions and expenses, or to $3,000, one half of which is chargeable to the plaintiff. In our opinion, the complaint is not well founded.
 

 The transaction between the parties represented a definite departure from the plan included in their original agreement under which defendants were not only obligated to improve and develop the property, but likewise to sell it. After the transaction was coñsummated, Mrs. Byrd still had her property on hand and was faced with the necessity of selling it at her own expense. It would seem to be plain that if the parties had intended to allow the 15% deduction in connection with the sale of the 50 lots in question, an agreement to that effect would have been made. But this was not done. As a matter of fact, in the statement submitted by defendants to Mrs. Byrd in 1931, no such deduction was made or claimed. This shows that defendants did not at that time consider they were entitled to deduct 15% of the purchase price as recited in the acts of sale.
 

 (4) The prayer of the petition is for judgment in favor of plaintiff and against defendants, in solido, with interest. The question of whether the obligation sued on is joint or solidary was also raised by an exception, which was referred to the merits. In deciding the case on the merits, the trial judge sustained defendants’ contention and rendered a judgment jointly and not solidarily against them.. We think the ruling was correct.
 

 An obligation in solido is not presumed. It must be expressly stipulated. Civil Code, Article 2093. An examination of the contract and sale constituting the transaction between the parties shows conclusively that the conveyance was made to John T. Laycock and Louis U. Babin jointly. In the contract, Mrs. Byrd is referred to as the party of the first part, and John T. Laycock and Louis U. Babin" are referred to as parties of the second part. The contract provides that the net proceeds derived from the sale of the property “are to be divided equally between the Party of the First Part and the Parties of the Second Part, share and share alike, the Party of the First Part getting % and the Parties of the Second Part getting the balance, or Further on in the contract, this method of dividing the profits is reiterated in the stipulation that “after the payment of all of said indebtedness, the proceeds are to be divided equally between the Party of the First Part and thé Parties of the Second Part.”
 

 When, in accordance with the contract, title to the property was given defendants, the reference to the division of the profits, was eliminated as a matter of policy.. But this particular feature of the contract re
 
 *925
 
 mained unaffected as shown by the counter-letter simultaneously executed by the parties.
 

 There is nothing in the contract that indicates each of the parties of the second part agreed to divide with Mrs. Byrd the profits realized from the transaction. The stipulation that Mrs. Byrd, as the party of the first part, was to receive one half of the profits and that Laycock and Babin, as parties of the second part, were to receive the other half, cannot be construed so as to mean ' that Laycock and Babin each bound himself to pay Mrs. Byrd one half of the profits. The language of ’the agreement is clear. Mrs. Byrd was to receive one half of the profits, and Laycock and Babin together were to receive the other half. Mrs. Byrd did not agree to sell, and did not sell, the whole property to each of the purchasers. She agreed to sell, and actually sold, the whole property in pursuance of the agreement to Laycock and Ba-bin jointly. The agreement to divide the profits was nothing more than a part of the consideration for the sale.
 

 It is a settled principle of law that joint purchasers of real estate cannot be condemned in solido for the purchase price unless it is so stipulated 'and agreed by them. Jaenke v. Taylor, 160 La. 109, 106 So. 711.
 

 Since we have reached the conclusion that the obligation sued on is joint and not solidary, we do not find it necessary to consider the alternative motion to dismiss the suit filed by the appellant in this Court.
 

 For the reasons ■ assigned, the judgment appealed from is affirmed.