**84 So.2d 606**

Julieta CARDOS, Wife of Wade I. Elliot, individually and on behalf of Manuelita Munos Brenes Cardos et al., and Jorge Mario Cardos

John CRISTADORO and Radio Specialty Corporation.

No. 41916.

Dec. 12, 1955.

Alcide J. Weysham, New Orleans, for defendant-appellant.

Herbert J. Garon, New Orleans, Nathan Greenberg, Gretna, for plaintiffs-appellees.

SIMON, Justice.

Plaintiffs-appellees filed this suit against John Cristadoro and the Radio Specialty Corporation for specific performance of a

private agreement wherein the five incorporators obligated themselves to purchase the stock of a deceased stockholder in the Radio Specialty Corporation. On written motion by the parties, the suit against the Radio Specialty Corporation was dismissed.

Plaintiffs-appellees are the heirs of the late Fernando Cardos who was one of the five incorporators of the Radio Specialty Corporation. At the time of the death of Cardos on August 6, 1950, he and the defendant John Cristadoro were the sole remaining parties affected by the said private agreement, the others having disposed of their respective stock interests. Upon demand by the heirs of Cardos, John Cristadoro refused to purchase the decedent's shares of stock, contending that the said agreement had never become effective among the parties thereto, and that, if it was ever enforcible, the obligation of purchasing the stock at book value had been abrogated and repudiated by the parties thereto. Defendant further contends that the plaintiffs herein are entitled to receive no more than the par value of the stock left by decedent, or $100 per share.

The private agreement herein sued upon, bearing the signature of the five incorporators, was dated March 29, 1932, and provided in part as follows:

"Now Therefore, it is agreed between the said parties as follows, to-wit:

"(1) Upon the death of any one of them, the remaining parties shall and are hereby obligated *in solido* within ninety days to purchase the stock of the decedent in the Radio Specialty Corporation at its book value as determined by the last fiscal audit of the company, or last quarterly statement if one has been prepared.

"(2) The remaining parties are bound as among themselves to purchase the stock of the decedent party in the proportion of their then ownership of stock in the company, but should any of said parties refuse or fail to purchase his proportion upon demand, the remaining parties shall be entitled but not bound to purchase the stock in proporation to their ownership of stock, provided, however, that nothing contained in this paragraph shall prevent the decedent's estate from enforcing performance of their obligation to purchase against any or all the surviving parties.

"(3) The estate of the decedent party is bound and obligated to sell the stock owned by the decedent to the surviving parties on the terms and conditions above stipulated." (Emphasis ours.)

Upon trial of the matter, the district court rendered judgment in favor of plaintiffs, ordering and condemning the defendant to specifically perform the agreement dated March 29, 1932, and thus purchase at book value the 50 shares of capital stock of Radio Specialty Corporation

from the estate of Fernando Cardos, fixing their book value at $146.43 per share. The said judgment further decreed that in the event John Cristadoro failed to so perform within 15 days from the date of the signing of said judgment, that then there be judgment in favor of plaintiffs and against John Cristadoro in the sum of $7,321.50, which amount represents the total book value of said shares, together with legal interest from date of rendition of judgment. The defendant appeals and the plaintiffs answer said appeal, praying that the judgment be amended so as to award legal interest from date of judicial demand.

In order to sustain his contention that the agreement herein sued upon was never put into effect, and hence unenforcible, defendant and his witnesses testified that other co-signers of said agreement sold their shares of stock at par value, and further, that Fernando Cardos purchased shares of stock at their par value of $100 per share and verbally agreed to resell and transfer said shares to the corporation at the same price, irrespective of its book value.

Defendant's son, who had been a stockholder of the corporation since 1946, testified that he had no knowledge of any agreement by which his father was obligated to purchase stock at book value. He further testified that there was a verbal agreement among officers of the corporation to purchase the stock at par value,

although the charter calls for book value. Defendant testified that Fernando Cardos participated in various meetings when stock "transfers were made or turned back to the corporation and sold" and that these "transactions were always on a par value basis".

Fundamentally, legal agreements have the effect of law upon the parties, and as they bind themselves they shall be held to a full performance of the obligations flowing therefrom. In determining the rights, obligations and relationships arising from an instrument, such as a commutative contract presented in the instant case, courts are bound to give legal effect to the true intent of the parties, and when interpreting or construing such an instrument, all facts and circumstances relevant and pertinent are to be weighed and considered.

As a general rule, parol evidence is inadmissible to vary, modify, explain or contradict a writing. This general rule, as is true with most general principles, has been made the subject of certain exceptions. The pertinent exception applicable here is that where the words used in an instrument are not clear and explicit and may in their application lead to absurd consequences, or where its contents exhibit ambiguity and uncertainty, or where the mutual intention of the parties has not been fairly explicit, the courts may consider all pertinent facts and circumstances, including the party's own con-

clusion of its meaning, rather than adhere to a forced meaning of the terms used.

At the outset it is observed that the private agreement herein under consideration imposes obligations which become effective and enforcible only upon the death of one or more of the co-signers thereto. The words "Upon the death of any one of them, the remaining parties shall and are hereby obligated * * * to purchase the stock of the decedent * * * at its book value * * *" are clear, positive and explicit. There is no uncertainty or ambiguity as to what the mutual intention of the parties was at the time they incorporated this quoted language in the instrument. There is no uncertainty that the parties intended to and did obligate one another, upon the death of any one of them as a stockholder and co-signer, to purchase at book value the decedent's stock interest from his estate. With this obligation to purchase was the corresponding obligation of the estate to sell this stock interest to the surviving parties to the agreement. This mutuality of obligations, undoubtedly executed for the benefit of the contracting parties, is also clear and unambiguous. Such mandatory obligations were expressly intended to keep the ownership of these shares of stock within the original incorporators.

In the case of Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, 75, this court in quoting from an earlier case stated:

"In Rodgers v. S. H. Bolinger Co., 149 La. 545, 89 So. 688, 690, this court held that:

"'When parties reduce their contracts to writing, and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete undertaking of the parties.' * * *"

Defendant contends that the parol evidence submitted by him amply demonstrates or establishes a repudiation and abandonment by the parties of this private agreement now sought to be enforced. We do not agree with his contention. In view of the fact that this private agreement became effective only upon the contingency of the death of a co-signer, whatever private dealings may have been conducted by the parties can give no comfort to the defendant as a basis for repudiation of this contract. Manifestly, they cannot affect the clearly expressed obligations which become enforcible upon death of one of the parties. Unambiguous contracts cannot be destroyed by ambiguous circumstances. Ker v. Evershed, 41 La. Ann. 15, 6 So. 566.

Further, the record is silent as to any agreement between the parties which would in the slightest affect the validity and enforcement of this private agreement. Assuming that there was such an agreement, we find no evidence to sup-

port the requirement that the subsequent agreement, in order to constitute a modification, be clearly defined, and that the party sought to be held thereby did in fact actually agree and authorize the modification. In the case of Byrd v. Babin, 196 La. 902, 200 So. 294, 299, we said:

"We do not think that the rule permitting a written contract to be altered or modified by a subsequent parol agreement can be successfully invoked, unless the alleged subsequent parol agreement is clearly defined and unless it be shown that the party sought to be held actually agreed to or authorized the subsequent contract. * * *"

At all events, the trial judge concluded that the private agreement sued on was a legal, valid and forcible contract, the evidence of the defendant notwithstanding, and we find no evidence which would warrant a different conclusion from that reached by him.

In their answer to this appeal, plaintiffs-appellees urged that the judgment of the district court should have awarded interest from the date of judicial demand in lieu of interest from the date of judgment. Appellant offers no opposition to this amendment as prayed for. The record reveals that though plaintiffs-appellees originally failed to pray for legal interest from the date of judicial demand, leave of court being granted, they supplemented and amended their original and first supplemental petitions so as to include interest from date of judicial demand.

Article 157 of the Louisiana Code of Practice provides that if, in an action of debt, the plaintiff fails to claim the interest due to him, or to amend his petition, in order to include it, he cannot after judgment demand such interest by another action, for the reason that he is thus considered as having remitted it. This article, however, gives him the right at any time before judgment to amend his petition and thus claim the interest.

Under these circumstances and codal provisions, the plaintiffs are entitled to receive legal interest from date of judicial demand until paid.

Accordingly, for the reasons assigned, the judgment of the trial court is amended so as to award interest thereon from the date of judicial demand; and in all other respects the judgment herein appealed from is affirmed.