481 So.2d 1013 (1986)
Carlos J. CASHIO, et al.
v.
James A. SHORIAK, et al.
No. 85-C-1493.
Supreme Court of Louisiana.
January 13, 1986.
*1014 Stephen M. Irving, Baton Rouge, for plaintiff-applicant.
Randall J. Cashio, Baton Rouge, for defendant-respondent.
MARCUS, Justice.
Carlos J. Cashio, developer of Bon Lieu subdivision and owner of several subdivision lots, his wife, and Mr. and Mrs. William C. Harden, Sr., owners of a subdivision lot, filed this suit for injunctive relief against defendants, each of whom owns a subdivision lot, to enforce building restrictions established and duly registered in 1975 and 1977 which limit the right to erect signs in the subdivision. At the time this suit was filed, each defendant was displaying a sign in his yard (with some defendants displaying a few signs) similar to those distributed by candidates during political campaigns. Each sign measures eighteen by thirty inches, has a white background with red lettering, contains the statement "We Have A Right To Clean Water," and is attached to a wooden stake three feet long. The covenant which plaintiffs seek to enforce is contained in paragraph 14 of the restrictions and provides that:
No sign of any kind shall be displayed to the public view on any lot except one professional sign of not more than one square foot, one sign of not more than five square feet advertising property for sale or rent, or signs used by a builder to advertise the property during the construction and sales period.
Defendants contend that neither Cashio nor the other subdivision lot owners originally intended for the covenant's proscription to include political yard signs. Alternatively, they argue that the right to enforce the restriction has been waived by the failure to object to frequent and continuous violations and that enforcement of paragraph 14 in this case would violate their first amendment right to free speech.
After a hearing, the trial court rejected defendants' arguments finding first that paragraph 14 clearly and unambiguously conveys an intent to prohibit the display of political yard signs; secondly, that the past violations had been too few in number and too infrequent to constitute a waiver;[1] and finally, that the case presented no constitutional issues since defendants were aware of the restriction when they bought their lots. Accordingly, the court granted the preliminary injunction prohibiting defendants from displaying the challenged signs. Defendants appealed. The court of appeal affirmed with one judge dissenting.[2] On defendants' application, we granted certiorari to review the correctness of that decision.[3]
The issues presented for our determination are: (1) whether Cashio and the other subdivision lot owners originally intended for the prohibition to include small political yard signs; (2) if the restriction does apply to small political yard signs, whether it has been abandoned by frequent and continuous violations; and (3) if the covenant applies to political yard signs and is still valid, whether enforcement of it will violate defendants' right to freedom of speech.
*1015 The law is clear that building restriction clauses constitute real rights, not personal to the vendor, and inure to the benefit of all other grantees under a general plan of development, and are real rights running with the land; and that the remedy of the other grantees to prevent a violation of the restrictions by another is by injunction. Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 (1941). It is undisputed in the instant case that the building restrictions constitute a general plan of development which was properly filed, thus giving constructive knowledge of its contents to all prospective purchasers.[4]
Restrictive covenants are to be construed strictly. Clark v. Manuel, 463 So.2d 1276 (La.1985). Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La.Civ. Code art. 783.[5] Apart from the rule of strict interpretation, documents establishing building restrictions are subject to the general rules of the Louisiana Civil Code governing the interpretation of juridical acts. Id., comment (c); Allen v. Forbess, 345 So.2d 950 (La.App. 2d Cir.1977). According to these general rules, interpretation of a contract is the determination of the common intent of the parties. La.Civ. Code art. 2045.[6] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code art. 2046.[7]
The authority cited above establishes the rule of interpretation that when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. La.Civ.Code art. 2046, comment (b); Maloney v. Oak Builders, 256 La. 85, 235 So.2d 386 (1970). Article 2046, however, establishes an exception to this rule. Even if the words are fairly explicit, it is our duty to refrain from construing them in such a manner as to lead to absurd consequences. Texaco v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963); National Roofing and Siding Co. v. Giaise, 434 So.2d 85 (La.App. 5th Cir.1982), writ denied, 435 So.2d 443 (La. 1983). When a literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, including the parties' own conclusion of the instrument's meaning, rather than adhere to a forced meaning of the terms used. La.Civ.Code art. 2046; Kendrick v. Garrene, 233 La. 106, 96 So.2d 58 (1957); Cardos v. Christadoro, 228 La. 975, 84 So.2d 606 (1955).
The lower courts found that the words of the contract are clear and explicit. Paragraph 14 unambiguously prohibits the display of any signs that do not meet one of the three enumerated exceptions, none of which are applicable here. The court of appeal also determined that a literal interpretation of the covenant would not lead to absurd consequences, reasoning that the purpose of the restriction was to prevent the subdivision from becoming littered with yard signs and thus to promote the beauty of the neighborhood. The court did not believe that this purpose was an absurd consequence. Accordingly, it interpreted the restriction literally and found that defendants' *1016 political signs were included within the covenant's ban.
The court of appeal's reasoning was flawed. It confused consequences with purposes. The two are not the same. A purpose is "something that one sets before himself as an object to be obtained...." Webster's Third New International Dictionary, 1847 (1961). A consequence, on the other hand, "is something that is produced by a cause ... a natural or necessary result...." Id. at 482. It is the absurdity of the consequences of a literal interpretation, and not the absurdity of the parties' purpose, which determines whether the court can search beyond the language of the contract for the parties' true intent. La. Civ.Code art. 2046. If a literal interpretation will lead to absurd consequences, then the court can go beyond the forced meaning and consider all pertinent facts.
The words of paragraph 14 are clear and explicit. This covenant provides that "[n]o sign of any kind shall be displayed...." If interpreted literally, this provision would ban all signs, aside from the three types excepted. In addition to the clean water signs, Bon Lieu residents would have to remove Season's Greetings signs, Merry Christmas signs, Beware of Dog signs, political candidate signs, and residents' name signs.[8] We believe that banning these types of signs would be an absurd result. Since a literal interpretation of the sign restriction would lead to absurd consequences, we must go beyond the words and review other evidence in our search for the parties' true intent.
It is well settled in the jurisprudence that in interpreting controversial clauses in a contract the court is guided by the interpretation the parties themselves placed upon the agreement and their understanding of it as shown by their actions. Superior Oil Co. v. Cox, 307 So.2d 350 (La.1975); Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961). Thus, the conduct of the parties is relevant in determining their common intent.
Defendants were not the first Bon Lieu residents to erect signs which did not qualify under one of paragraph 14's three exceptions. In fact, for the six to seven year period prior to the commencement of this lawsuit approximately half of the subdivision residents had, at one time or another, erected political yard signs with ten to fifteen of these signs being displayed during each major election. Yet, the instant litigation represents the first attempt to enforce the restrictive covenant against political yard signs. We believe that this acquiescence in the display of political yard signs indicates that the parties did not originally intend for these signs to be covered by paragraph 14's proscription.
Additional evidence that neither Cashio nor the other residents originally intended to include small political yard signs within the covenant's proscription can be found within the four corners of paragraph 14. The restriction lists three exceptions to the absolute ban. A lot may contain "one professional sign of not more than one square foot, one sign of not more than five square feet advertising the property for sale or rent, or signs used by a builder to advertise the property during the construction and sales period." All three of these exceptions pertain to small commercial signs. This fact indicates that the purpose of this restriction was to keep commercial signs, other than those specifically enumerated, out of the subdivision. Thus, the nature of the exceptions sheds some light on the intended scope of the general prohibition. We believe that when Cashio drafted the restriction, he did not intend for it to apply to small political yard signs, and that if he had, he would have so stated in unmistakable terms.
Under the circumstances, we conclude that neither Cashio nor the other subdivision residents originally intended for the restrictive covenant to apply to small political yard signs. Therefore, defendants' *1017 signs are not included within the restriction's prohibition. Since paragraph 14 does not prohibit defendants from displaying their signs, the trial court abused its discretion when it granted the preliminary injunction. Accordingly, we reverse the judgment of the court of appeal affirming the trial court's ruling. Because we base our decision on the finding that the restriction does not apply to defendants' signs, we need not rule on defendants' other two contentionsthat the covenant has been abandoned and that it violates defendants' constitutional right to freedom of speech.

Decree
The judgment of the court of appeal affirming the trial court's granting of a preliminary injunction is reversed. It is ordered that there be judgment in favor of defendants and against plaintiffs dismissing plaintiffs' demand for a preliminary injunction at their costs. The case is remanded to the trial court for further proceedings in accordance with law.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Judge (dissenting).
Blanche, J. dissents, being of the opinion that the banning of all signs in the subdivision except those permitted by Paragraph 14 of the restrictions does not lead to absurd consequences and would enforce the restriction as written.
NOTES
[1] The court also found that the past violations were of a different character than those involved in this case. It based this finding on a distinction between defendants' signs which express political views on a subject that is not voted on and those supporting political candidates. It then held that although the restriction may have been waived as to political candidate signs, it could still be enforced against the signs challenged in this case. We find no merit in this distinction. Like the signs displayed in the past, defendants' signs express opinion on political issues. The existence or nonexistence of an upcoming election is irrelevant.
[2] 472 So.2d 264 (La.App. 1st Cir.1985).
[3] 475 So.2d 1097 (La.1985).
[4] The law relative to building restrictions is presently codified at La.Civ.Code arts. 775 to 783. According to the official comments, the code articles do not change the law.
[5] La.Civ.Code art. 783 was enacted by Acts 1977, No. 170, § 1, eff. Jan. 1, 1978. Thus, this article is new. However, it does not change the law. Rather, it codifies Louisiana jurisprudence. La. Civ.Code art. 783, comment (a). See, e.g., Salerno v. Delucca, 211 La. 659, 30 So.2d 678 (1947).
[6] La.Civ.Code art. 2045 was enacted by Acts 1984, No. 331, § 1, eff. Jan. 1, 1985. Thus, this article is new. However, it does not change the law. Rather, it states a principle which underlies La.Civ.Code arts. 1945, 1949, 1950 and 1956 (1870). La.Civ.Code art. 2045, comment (a).
[7] La.Civ.Code art. 2046 was enacted by Acts 1984, No. 331, § 1, eff. Jan. 1, 1985. Thus, this article is new. However, it does not change the law. Rather, it makes applicable to contracts the principle contained in La.Civ.Code art. 13 (1870) for interpretation of laws and reproduces the substance of La.Civ.Code art. 1945(3) (1870). La.Civ.Code art. 2046, comment (a).
[8] Testimony at the hearing established that the signs listed above were present in the subdivision.