DOMENGEAUX, Judge.
Krielow Brothers, Inc. (Krielow Brothers), a general contractor, commenced these proceedings seeking reimbursement and extra compensation to which it alleges entitlement pursuant to a construction contract executed with the State of Louisiana. Krielow Brothers named as the defendant, the State of Louisiana, Department of Transportation and Development (State or DOTD).
The contract in issue, executed in July of 1985, called for the construction of an experimental breakwater structure entitled “Johnson’s Bayou — Holly Beach (Experimental T-Groin Installation)”. The project required the driving of treated timber piles into the seabed of the Gulf of Mexico approximately two hundred feet from the shoreline in Cameron Parish, Louisiana. Subsequent to the installation of the piles, “riprap” and limestone “aggregate” were placed at the base of the piles, used automobile tires were affixed to the piles and three inch by six inch cross-ties, known as “walers”, were bolted to the piles to reinforce the structure. The purpose of the project was to dissipate the energy of a storm tide and inhibit the erosion of the coastline.
Work on the structure commenced with the driving of the first pile on September 5, 1985. The DOTD recorded the final acceptance of the project with the Clerk of Court of Calcasieu Parish in January, 1986.
Krielow Brothers sought at trial reimbursement or extra compensation for three specific items:
(1) The plaintiff sought reimbursement for an amount of aggregate in excess of the amount called for in the contract specifications, but which was necessary for the proper completion of the project;
(2) The plaintiff sought reimbursement for approximately one and one-half feet of timber cut from the top of each pile; and
(3) The plaintiff sought reimbursement and extra compensation for the materials and labor necessary to properly install galvanized metal coverings on the tops of each cut pile.
The Trial Court found in favor of the general contractor on the issue of reimbursement for the additional aggregate, but rendered judgment in favor of the State on the two questions addressing the piles.
Krielow Brothers, on appeal, raised the following issues:
(1) Was the Trial Court manifestly erroneous in failing to award them any reimbursement for the “cut-offs” of excess linear piles? and
(2) Was the Trial Court manifestly erroneous in failing to render judgment in *557 its favor for reimbursement and extra compensation for the treatment and installation of galvanized metal coverings on the exposed pile heads?
The State did not elect to appeal the lower court decision awarding Krielow Brothers reimbursement for the additional aggregate.
The resolution of both issues on appeal involves the interpretation of the agreement in issue, which as between the parties is law. Cardos v. Cristadoro, 228 La. 975, 84 So.2d 606 (1955). The contract defines the respective rights and duties of the parties to the agreement and absent ambiguity no interpretation should be rendered. La. Civ.Code art. 2046 (1984). The documents which comprised the entire agreement between Krielow Brothers and the State, in the instant case, included: (1) the contract dated July 29, 1985; (2) the plans and proposal on file with the DOTD; (3) the Louisiana Standard Specifications For Roads And Bridges publication, 1982 edition, commonly referred to as the “Gold Book” because of its gold cover; and (4) the supplementary specifications and special provisions which accompanied the proposal. Subsequent to our review of the facts and the agreement in issue, we do not believe the judgment of the District Court is manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The project specifications in issue called for treated timber piles of twenty-eight and one-half feet in length. Krielow Brothers sought to obtain piles of a length of twenty-eight and one-half feet, but were advised, apparently by pile industry experts, that the standard pile was thirty feet in length. The general contractor was unable to obtain twenty-eight and one-half foot piles, purchased thirty foot piles and now seeks to be reimbused for the approximately one and one-half feet cut from each pile.
Krielow Brothers maintains entitlement to the reimbursement pursuant to sections 804.13 and 804.14 of the Gold Book. Sections 804.13 and 804.14, in essence, provide that a contractor is entitled to a payment of two-thirds of the contract unit price per linear foot for each pile “cutoff”, “made as directed”. Carl Krielow, the Vice-President of Krielow Brothers, testified that the State ordered that the excess of each pile be cut off and that a State engineer measured the “cut-offs”.
Although Krielow Brothers’ argument upon initial review appears to have merit, we do not believe the general contractor has correctly interpreted the Gold Book specifictions. Section 804.03 of the Gold Book, subtitled “ORDER LISTS FOR PILING.” provides, in part:
In determining lengths of piles for ordering, the lengths given in the order list will be based on the lengths which are assumed to remain in the completed structure. The contractor shall, at his own expense, increase the lengths given to provide such additional length as necessary to suit the contractor’s method of operation.
The contractor, in this case, was only able to obtain thirty foot piles but, additionally, the evidence suggests that its method of operation required the purchase of piles in excess of the completed structure length of twenty-eight and one-half feet.
Piles, according to the Gold Book and the evidence presented, may be driven by a number of different methods. We note that the use of a metal cover designed to prevent the tops of the piles from being damaged by the hammer blows of the pile driver is one method which may be utilized. The general contractor in the instant case chose not to employ that method, nor any other protective method, and simply allowed the hammer head of the driver to beat directly down upon the top of each timber pile. This method resulted in brooming, splitting and the crushing of the tops of most of the piles, necessitating the tops being cut off. The evidence received at trial indicates that each pile received an average of fifteen to twenty hammer blows per foot to drive the piles the final few feet to the correct elevation.
Krielow Brothers’ argument fails because, although the Gold Book provides for the reimbursement of cut-offs “made as directed”, section 804.13(b) provides that payments will not be made for cut-offs *558 which “have been necessitated by crushing, brooming, splitting or other damage resulting from careless driving.” The Trial Court concluded, and we fail to find manifest error, that in addition to the fact that the general contractor purchased piles in excess of specification lengths, its method of operation necessitated the tops being removed.
Krielow Brothers also argues that section 804 should not be literally applied because it is entitled “Bearing Piles” and the piles in issue were not load bearing piles. This argument fails because the Gold Book, section 101.74, specifically states:
The titles or headings of Sections and Subsections herein are intended for convenience of reference and shall not be considered as having any bearing on their interpretation.
Krielow Brothers also sought and was refused at trial reimbursement and extra compensation for the treatment of the exposed pile tops and the installation of galvanized metal coverings. The plaintiff maintains that the plans and specifications for the project did not call for the installation of metal coverings and, therefore, it should be appropriately compensated for the unanticipated work.
Krielow Brothers’ position is not tenable because it purchased piles of excessive length, its method of operation necessitated cutting the tops of the piles and because of the dictates of Gold Book Section 804.12. Section 804.12 refers to cut-offs. Subsection (c)(4) of section 804.12 mandates that the treatment of pile heads conform to section 812. Section 812, specifically section 812.07(a), provides that pile heads, after cutting, should be treated to prevent decay and if the specifications for the project do not detail the specific method of protection to be employed, the general contractor is to treat the exposed tops and then install galvanized metal coverings. No method of decay prevention was contemplated in the plans or specifications, thereby, implementing the requirements of section 812.07(a).
For the above and foregoing reasons the judgment of the District Court is affirmed.
All costs of this appeal are assessed against the appellant, Krielow Brothers, Inc.
AFFIRMED.