GRAVOIS, J.
_JjPlaintiff/appellant, Fashion Plantation Estates Property Owners Association (“the Association”), appeals a trial court judgment that denied its petition for a permanent injunction and found that defendants/appellees, Albert and Gilda Sims (“the Sims”), were not in violation of the subdivision’s restrictive covenants. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
The Sims own a home in the Fashion Plantation Estates Subdivision located in Hahnville, Louisiana. Their property, as well as all property in the subdivision, is subject to restrictive covenants recorded in the St. Charles Parish conveyance records. The Association is responsible for enforcing the covenants. The original covenants, recorded on February 26, 1999, provide, in pertinent part:
8. Temporary Structures:
[[Image here]]
Parking or temporary storage of boats, campers, etc. will not be permitted in front of any homes.
By act recorded on June 11, 2010 in the St. Charles Parish conveyance records, the covenants were amended. The amended covenants provide, in pertinent part:
11. Parking
... Parking or temporary storage of boats, campers, recreational vehicles, trailers, etc. will not be permitted in front of any homes. Also, such items will not be permitted within 100 feet from the edge of any street unless it is parked behind a six-foot privacy fence or in a garage.
In 2004, the Sims purchased a boat, and since that time, have parked it in their driveway, next to the garage door, and in front of a portion of their home. On April 7, 2015, Vincent Comberrel, the Association’s Vice-President and Treasurer, sent the Sims an informal notification advising them that they were in violation of Paragraph 11 of the amended covenants because their boat was parked “in front of |a[their] property.” In the notification, the Sims were informed that they had until April 10, 2015 to remove the boat from the front of their property or formal action would be imposed. When the Sims failed to comply with the Association’s informal request, Mr. Comberrel sent them formal notification on behalf of the Association via letters dated April 13, 2015,[1] April 21, 2015, and May 15, 2015 that they continued to be in violation of Paragraph 11 of the amended covenants, and that if they did not remove their boat from the front of their property, the Association would implement the enforcement provision of the covenants and impose an assessment fee of $15.00 per day until the violation was corrected, plus costs and attorney’s fees.
The Sims continued to ignore the Association’s requests, and thus, on August 5, 2015, the Association filed a petition for permanent injunction pursuant to La. C.C. art. 779 in the 29th Judicial District Court, seeking to permanently enjoin the Sims from violating Paragraph 11 of the amended covenants. The Association prayed that the Sims pay a $15.00 daily fine and all costs incurred in connection with the Association’s enforcement of the covenants, including attorney’s fees.
On August 17, 2015, the Sims answered the petition for permanent injunction, de *386 nying the ciatos made in the petition, and arguing that the covenants were improperly amended in 2010 and that their property is only subject to the original covenants.
A bench trial on the permanent injunction was held on December 4, 2015. At trial, Mr. Comberrel testified that the Sims’ boat is parked in front of their home, is only 54½ feet from the street, and is not behind a six-foot privacy fence, and thus, they are in violation of both Paragraph 8 of the original covenants and Paragraph 11 of the amended covenants. Three photographs of the front of the |shome were submitted into evidence depicting the location of the boat. Mr. Comberrel testified that the pictures reveal that the boat is parked in front of a portion of the house that faces the street. He stated that it was his opinion that the portion of the house that the boat is parked in front of is part of the front of the home.
Mr. Comberrel further testified that the purpose of Paragraph 11 of the covenants is “to maintain the value of the properties by, by continuing them to look like a, uh, a property subdivision and not some junkyard or whatever else might be put in front of their homes.” He testified that there had been other instances where boats, trailers, or campers had been parked the way Mr. Sims parked his boat, and in those instances, the individuals were sent a notice of the violation, were given time to correct it, and corrected the violation.
Mr. Sims admitted that his boat is parked in the driveway in front of a portion of his house that faces the street. He described the boat as being on the “side of [his] house where the garage is.”
Following the trial, both parties submitted post-trial memoranda. In their memorandum, the Sims argued that a legal definition, not a literal interpretation of what constitutes the front of the Sims’ property, should be applied. In its post-trial memorandum, the Association argued that the covenants are properly recorded, the boat is parked in front of the home, and the Sims have violated the covenants “to the detriment of the overall scheme of uniformity of planning and development governing the subdivision and to the detriment of the other property owners.”
On February 4, 2016, the trial court issued a judgment in favor of the Sims. In its written reasons for judgment, the trial court found that Paragraph 8 of the original covenants is vague and ambiguous. The trial court found that “[n]othing in the covenants defines ‘in front of,’ and the covenants do not otherwise employ the term ‘front’ in such a way that ‘in front of in Paragraph 8 could be interpreted |4in relation to other provisions of the covenants.” The trial court went on to note that while the Association contends that the portion of the structure that juts out past the garage constitutes the “front” of the home, as supported by the testimony of Mr. Comberrel, this may not be the “opinion” of other laymen who may view the Sims’ home. The trial court stated that this finding is supported by the testimony of Mr. Comberrel, who testified that the covenants were amended in 2010 because several of them were ambiguous and needed explanation. Accordingly, the trial court found that the placement of the Sims’ boat on the side of the home in front of the garage door did not violate the original 1999 restrictive covenants.
The trial court also found that the 2010 amendments to the covenants were not effective as to the Sims. It noted that the original covenants set a term of 25 years and a method thereafter for their continuation and modification. The trial court found that the original covenants were recorded on February 26, 1999, and thus, had not been in effect for the 25-year term, such that they could be amended in 2010.
This timely appeal followed.
*387 ASSIGNMENT OF ERROR NUMBER ONE
In its first assignment of error, the Association argues that the trial court erred in finding Paragraph 8 of the original covenants to be vague and ambiguous. The Association argues that in plain and simple terms, Paragraph 8 prohibits the parking of a boat in front of a home. The Association contends that the pictures , of the home submitted into evidence reveal that there are multiple front walls of the Sims’ house, staggered at varying distances, but all integrated into one architectural pattern by vertical arrangements- of decorative inlays on each of the home’s front walls. This includes the part of the home that the boat is parked in | ¡ffiont of; therefore, the Association argues, the evidence supports a finding that the boat is parked in front of the home.
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses and improvements. La. C.C. art. 775. Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La. C.C. art. 783. Building restrictions are to be strictly construed. Cashio v. Shoriak, 481 So.2d 1013 (La. 1986). However, the provisions of the Louisiana Homeowners Association Act, La. R.S. 9:1141.1, et seq., supersede the Civil Code articles on building restrictions in the event of a conflict. La. C.C. art. 783. Regarding interpretation of building restrictions on property regulated by a homeowners association, La. R.S. 9:1141.4 provides that “[t]he existence, validity, or extent of a building restriction affecting any association property shall be liberally construed, to give effect to its purpose and intent” (Emphasis added.) See also Fern Creek Owners’ Ass’n v. City of Mandeville, 08-1694 (La.App. 1 Cir. 6/30/09), 21 So.3d 369, 377.
In the present case, Paragraph 8 of the original covenants states, in pertinent part: “Parking or temporary storage of boats, campers, etc. will not be permitted in front of any homes.” (Emphasis added.) As the trial court properly pointed out, “in front of’ is not defined in the covenants, and “the covenants do not otherwise employ the term ‘front’ in such a way that ‘in front of in Paragraph 8 could be interpreted in relation to other provisions of the covenants.”
At trial, the Association attempted to clarify the meaning and extent of “in front of’ as it related to the restriction. Pictures submitted into evidence showed that there are multiple front walls of the Sims’ house, staggered at varying distances, but all integrated into one architectural pattern by vertical arrangements of decorative inlays on each of the home’s front walls, and that the home’s garage |fidoor opens towards the side of the home. The boat is shown as being parked next to the garage door (between the garage door and the side line of the lot), but in front of the farthest to the right wall of the home that faces the street with a decorative inlay. Mr. Comberrel testified that the boat rested in front of a portion of the house that faces the street, and it was his opinion that anything facing the street would be considered the front of the house. Mr. Comberrel testified that there were no other homes in the subdivision that had boats parked in the same manner as the Sims. When asked about the purpose of the amended parking restriction, Mr. Comberrel testified that it was to “maintain the value of the properties by, by continuing them to look like a, uh, a property subdivision and not some junkyard or whatever else might be put in front of their homes.”
The trial court held that the restriction in question was vague and ambiguous, and *388 as such, it must be interpreted against the developer and in favor of the. Sims’ property. However, upon review, we find that the trial court .erred when it failed to properly consider and apply the provisions of La. R.S. 9:1141.4 of the Louisiana Homeowners Association Act. In a footnote to its written reasons for judgment, the trial court acknowledged the existence of the Louisiana Homeowners Association Act; however, it failed to consider the application of this law because “the Association did not offer any evidence at the trial to show the intent of RJM Enterprises [sic] as to, or the purpose of, Paragraph 8.”[2]
|7We find, however, that through Mr. Comberrel’s testimony at trial, it was shown that the purpose and intent behind the parking restriction was to maintain the value of the property “by continuing them to look like a, uh, a property subdivision and not some junkyard or whatever else might be put in front of their homes.”
As set forth above, regarding interpretation of building restrictions on property regulated by a homeowners association, La. R.S. 9:1141.4, provides that “[t]he existence, validity, or extent of a building restriction affecting any association property shall be liberally construed to give effect to its purpose and intent.” (Emphasis added.) See also Fern Creek Owners’ Ass’n, supra. Therefore, pursuant to La. R.S. 9:1141.1, we find that to liberally construe “in front of’ as used in Paragraph 8 of the original covenants to give effect to the Association’s purpose and intent, it must be interpreted to mean that the area where the Sims’ boat was parked — next to the garage door (between the garage door and the side line of the lot), but in front of the farthest to the right wall of the home that faces the street with a decorative inlay — is “in front of’ the Sims’ home. Accordingly, we ñnd that the trial court was manifestly erroneous and clearly wrong in finding that the Sims’ boat was not parked “in front of’ the Sims’ home.
Considering our findings above, we reverse the trial court’s judgment under review and remand the matter to the trial court for issuance of an injunction permanently prohibiting the Sims from violating Paragraph 8 of the original covenants, and for a determination by the trial court as to whether the Sims should be assessed “legal and related filing fees” associated with the Association’s enforcement of the restrictive covenants.[3]
^ASSIGNMENT OF ERROR NUMBER TWO
The Association argues in its second assignment of error that the trial court erred in finding the amendments to the cove *389 nants are not effective as to the Sims. The Association argues that should this Court deny its first assignment of error, the Association would have to rely on the amendments to the covenants to contend that the boat is not parked at least 100 feet from the edge of the street and is not parked behind a six-foot privacy fence or in a garage. However, considering our findings above, this assignment of error is moot.
CONCLUSION
For the foregoing reasons, we reverse the trial court’s judgment under review and remand the matter to the trial court for issuance of an injunction permanently prohibiting the Sims from violating Paragraph 8 of the original covenants, and for a determination by the trial court as to whether the Sims should be assessed legal and related fees associated with the Association’s enforcement of the restrictive covenants.
REVERSED AND REMANDED

. The record reflects that this letter was never delivered to the Sims.

. Specifically, the trial court’s reasons for judgment provided the following regarding the Louisiana Homeowners Association-Act, to-wit:
At the time of the original 1999 Restrictive Covenants the law provided that building restrictions were .strictly construed in favor of the property owner’s free use of his property. Subsequent to the original covenants, the Legislature enacted the Louisiana Homeowners Association Act enacted as La. Rev. Stat. §§ 1141.1, et seq. The Act changed .the law and provides that the “existence, validity, or extent of a building restriction .,. shall be liberally construed to give effect to its purpose and intent,” The Court does not find it necessary to determine whether or how the change in interpretation would affect already existing ambiguous covenants because the Association did not offer any evidence at the trial to show the intent of RJM Enterprises [sic] as to, or the purpose of, Paragraph 8.

. The enforcement provision, contained in Paragraph 20 of the original covenants, provides:
Enforcement shall be by legal proceedings and/or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or to recover damages, Residents violating these restrictions will be responsible for any legal and related fees associated with the en *389 forcement of said restrictions. Property liens will be placed on owners violating these covenants for all legal and related filing fees.