MADDOX, Justice.
This appeal involves the alleged violation of a restrictive covenant.
Several owners of lots in Hampton Downs Subdivision in Mobile sued Dodson, who owned Lot 1 in the subdivision, alleging that Lot 1 was subject to certain restrictive covenants, and that Dodson constructed a dwelling, a stable and a fence on the lot in violation of the restrictive covenants. Plaintiffs sought damages and an injunction prohibiting completion and occupancy of the dwelling unless certain plans and specifications were submitted and approved in accordance with the restrictive covenants. The principal violation of the covenants complained of, and the issue which we address, involves the use by Dodson of wood veneer exterior, instead of 60% brick veneer, as required by the covenants.
The trial court found that the wood siding and fencing were in violation of the covenants but that other alleged violations were waived by the subdivision’s “Architectural Control Committee.” The court ordered Dodson to submit building plans to the architectural committee for the modification of the house so as to include the minimum of 60% brick veneer.
The evidence shows that the owner of the subdivision was originally Hampton Downs, Ltd., a limited partnership composed of Dale Cady, as general partner, and the plaintiffs/appellees here, as limited partners. In early 1976, a dispute arose among the partners, which led to a lawsuit by the limited partners against the general part *271 ner, and the subsequent disruption of the partnership. One result of this lawsuit was that Cady was authorized to accept, for the partnership, offers on certain lots. He was the sole member of the Architectural Control Committee for a brief time. Dodson purchased Lot 1, the subject of this controversy, during this period.
Dodson testified that in negotiating with Cady over this purchase, he expressed concern to Cady over the restrictive covenants inasmuch as he desired to use a wood siding on his house instead of brick veneer, and that his purchase would be contingent upon his being able to use wood siding. He further testified that Cady told him that this would pose no problem, and that he definitely had authority to approve all plans. The plans were later examined at Cady’s office, because at that time, Cady Development Company was to construct the house.
Dodson paid $13,500 to Hampton Downs, Ltd. for the lot and received a deed executed by Cady as general partner. For reasons not relevant here, Dodson constructed the house himself. Between January and March, 1977, Dodson built a barn upon the lot with wood siding, even though the restrictive covenants required the siding of outbuildings to conform with the dwelling. In March, 1977, construction of the house was begun. By May, work was 65% to 70% complete, and the wood siding had been installed. Fannon, one of the appel-lees, knew these facts in June, 1977. Early in July, 1977, Dodson moved into the house, and on August 16, 1977, the carpet was installed at which time all work stopped. Dodson contends that the house was complete at this time. On September 2,1977, a V.A. inspector inspected the house and found that it was not complete for V.A. purposes; he found, among other things, a need for touch-up painting, splashblocks and a doorbell. However, on September 27, a local real estate appraiser was of the opinion that the house was complete in connection with a loan appraisal.
Dodson says he received no complaint or communication from the plaintiffs/appel-lees regarding the siding on his house until he was served with process on September 15, 1977, of this suit which was filed on August 30, 1977.
All parties agree that this appeal concerns only the question of whether the wood siding on the house violates the restrictive covenant. The parties limit their discussion to four issues.
The issue which is determinative of this appeal is whether or not the house was completed within the meaning of paragraph 22 of the restrictive covenants, and if so, was the brick veneer provision “deemed to have been complied with” under the provisions of that paragraph?
Paragraph 22 provides:
“PROCEDURE: The Committee’s approval or disapproval as required in these covenants shall be in writing. In the event the Committee or its designated representatives, fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been complied with.”
Appellant Dodson contends that the trial court erred in concluding that the house was not complete at the time suit was filed, because he says that when one is construing a restrictive covenant, the term “completion” should not be construed by the same stringent standards applied by a V.A. inspector in determining whether to approve a loan. He says that the V.A. standards are necessarily more strict that the standards required by the restrictive covenant. He states that the house was unquestionably substantially complete at the time suit was filed so that under paragraph 22 of the covenant concerning 60% brick veneer, a “related” covenant, should be “deemed to have been complied with.”
Appellees contend that paragraph 22 should not be construed to allow “substantial completion” rather than “completion.” They argue that the V.A. inspector’s findings should control especially since many of the features which he found incomplete were not minor, and that the appraiser’s *272 findings are irrelevant, coming four weeks after suit was filed. Appellees insist that the ore tenus rule compels this Court to uphold the findings of the trial court.
Appellant answers appellees’ argument and says that the appraiser’s findings are, in fact, relevant since no work had been done on the house between August 16, and his inspection on September 27. He also contends that for purposes of paragraph 22, all the incomplete features of the house were minor and that the language of that paragraph was included in the restrictions in recognition of the inequities that could develop if suit were filed after completion of a house. If “completion” is given the strained interpretation insisted upon by ap-pellees, he contends, the very purpose of paragraph 22 would be rendered ineffectual and meaningless. We agree with appellant.
Appellant further argues that the approval of his plans by the Architectural Control Committee was an effective approval of the wood siding or waiver of the brick veneer provision. He also contends that Cady’s actions in assuring him that wood siding was permissible constituted an effective estoppel. He also claims that the suit was barred by laches, filed as it was after the house was completed. We express no opinion on appellant’s further arguments, because of our agreement with him on his main argument that the house was complete insofar as the restrictive covenant was concerned.
We hold that the word “complete,” when used in restrictive covenants of this nature, means that the building has reached that stage in its construction when it can be put to the use for which it is intended, that is, it is substantially complete. Here, all the house lacked was some touch-up painting, splashblocks and a doorbell, and other minor things. The owner had already moved in.
The trial court obviously applied a strict definition to the word “complete” in making his findings. In this he erred.
REVERSED AND REMANDED.
BLOODWORTH, JONES, SHORES and BEATTY, JJ., concur.