775 So.2d 571 (2000)
WHITAKER CONSTRUCTION CO., INC. and Willis-Knighton Medical Center, Plaintiffs-Appellees,
v.
LARKIN DEVELOPMENT CORPORATION, Defendant-Appellant.
No. 34,297-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 2000.
*572 Hargrove, Pesnell & Wyatt, by Scott C. Sinclair, Counsel for Appellant.
Weems, Schimpf, Hayter, Gilsoul & Carmouche, by John O. Hayter, III; Pugh, Pugh & Pugh, L.L.P., by Lamar P. Pugh, Counsel for Appellees.
Before GASKINS, KOSTELKA and DREW, JJ.
KOSTELKA, J.
In this suit for declaratory judgment, Larkin Development Corporation ("Larkin") appeals the trial court judgment declaring that the placement of an office building on a tract of land by Whitaker Construction Co, Inc. ("Whitaker") and Willis-Knighton Medical Center ("Willis-Knighton") did not violate agreed-to building restrictions. We affirm.

FACTS
On April 30, 1996, Larkin Development Corporation ("Larkin") purchased approximately 76 acres of land in Bossier City, Louisiana from Haynesville Mercantile Company ("Haynesville"). As part of the sale, the parties agreed to building restrictions which governed the use of the tract of land (hereinafter the "Larkin tract") acquired by Larkin and the adjoining tracts retained by Haynesville.
*573 The subject 250-foot western and 50-foot southern restrictions which governed the Haynesville tract read as follows:
2.1 Haynesville hereby agrees that:
(a) As to that portion of Haynesville Tract "C" that lies West of the Larkin Development Tract, no aboveground improvements, other than paving, streets, landscaping and fencing, shall be constructed, placed or allowed to remain within two hundred fifty (250) feet of the Larkin Development Tract.
(b) As to that portion of Haynesville Tract "C" that lies South of the Larkin Development Tract, no aboveground improvements, other than paving, streets, landscaping and fencing, shall be constructed, placed or allowed to remain within fifty (50) feet of the Larkin Development Tract.
On August 18, 1999, Haynesville sold a little less than four acres of its remaining property to Willis-Knighton (hereinafter referred to as the "W.K. tract"). Approximately 118.91 feet of the northern border of the W.K. tract bordered the southern boundary of the Larkin tract, beginning at its westernmost point and going eastward. The excess 166.09 feet adjoined the southern boundary of Haynesville's remaining property. (See Appendix B). Thereafter, Willis-Knighton secured the services of Whitaker for the construction of a medical office building on the W.K. tract.
When Larkin advised Willis-Knighton and Whitaker (hereinafter referred to jointly as "plaintiffs") that the proposed location of the building was in violation of its interpretation of the building restrictions, plaintiffs filed this suit seeking declaratory judgment that the building location did not violate the agreed-to building restrictions. Larkin sought a reconventional demand seeking its own declaratory judgment that the location of the office violated the building restrictions and requiring plaintiffs to remove the building or alternatively seeking damages.
At trial, Larkin argued that the restrictions should be interpreted to extend into the W.K. tract via two overlapping arcs, as depicted in Appendix A, and that the placement of the building within the 250-foot arc violated the agreed-to building restrictions.
On the other hand, plaintiffs argued that the restrictions should be interpreted to extend due south and due west as shown in Appendix B and that based upon this view, the building placement violated neither restriction.[1]
When the trial court ruled in favor of plaintiffs declaring that the building did not violate the building restrictions, this appeal ensued.

DISCUSSION
The sole issue on appeal is the interpretation of the building restrictions. The parties reurge the arguments made at trial.
La. C.C.P. art. 1871 provides that courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. The declaration shall have the force and effect of a final judgment or decree. A declaratory judgment may be reviewed as other orders, judgments, and decrees. La. C.C.P. art. 1877. It is an appealable final judgment. Succession of Brantley, 96-1307 (La.App. 1st Cir.06/20/97), 697 So.2d 16.
On appeal of a declaratory judgment, the scope of appellate review is confined to a determination of whether the trial court abused its discretion by granting or refusing to render a declaratory *574 judgment. In re Peter, 98-0701 (La.App. 4th Cir.12/23/98), 735 So.2d 665; Liberto v. Rapides Parish Police Jury, 95-456 (La. App. 3d Cir.11/02/95), 667 So.2d 552.
Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La. C.C. art. 783.
Building restrictions are to be strictly construed. Diefenthal v. Longue Vue Management Corp., 561 So.2d 44 (La. 1990); Cashio v. Shoriak, 481 So.2d 1013 (La.1986).
Apart from the rule of strict interpretation, documents establishing building restrictions are subject to the general rules of the Louisiana Civil Code governing the interpretation of juridical acts. Cashio, supra; Allen v. Forbess, 345 So.2d 950 (La.App. 2d Cir.1977). According to these general rules, interpretation of a contract is the determination of the common intent of the parties. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Cashio, supra. Even if the words are fairly explicit, it is our duty to refrain from considering them in such a manner as to lead to absurd consequences. Id. Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intent of the parties. Diefenthal v. Longue Vue Management Corp., supra.
Larkin solely relies on the holding in Petition of Sewerage and Water Bd. of New Orleans, 257 La. 716, 243 So.2d 809 (1971) in support of its argument that there exists no ambiguity in the building restriction language.[2] Because, under the facts of that case, the supreme court interpreted the term "north" to mean northerly in general relation to the bound or point described, Larkin argues that this court should interpret the terms "west" and "south" in the same manner. Parenthetically, Larkin also argues that the trial court erred in failing to admit into evidence proffered exhibit D-5, the New Orleans, Louisiana maps, submitted by Larkin for the purpose of assisting in the court's understanding of that case.
Sewerage and Water Board involved the interpretation of the Drainage Act Amendment ("the Amendment") to the Louisiana Constitution. The provisions of the Amendment divided the City of New Orleans between the "`largely undrained sections' (Area A) and `the remaining area' (Area B)." The Sewerage and Water Board of New Orleans ("the Board") was authorized to divide the two areas into a number of drainage areas, based upon "logical engineering principles." The Board developed a drainage plan for a certain area of land (Drainage area "A-5") and petitioned the court for confirmation of the plan. Landowners affected by the plan contested it.
The landowners contended that the phrase "north of Florida Avenue" meant due north and that, therefore, although their property was in a section of New Orleans northerly of Florida Avenue, the A-5 land was not due north of Florida Avenue and, therefore, not included in Area A or A-5.
The Louisiana Supreme Court rejected this argument and found that the Amendment clearly set forth the limits of Area A. The court stated:
[T]he appellees rely chiefly upon the general rule that, in construing the description in deeds, `north' generally *575 means `due north'. Plaquemines Oil & Development Co. v. State, 208 La. 425, 23 So.2d 171 (1945). Even so, as Plaquemines Oil itself held, this general rule of meaning does not hold in a case where the clear intention is otherwise, as shown either by the instrument itself or by the surrounding circumstances; so that the term can also describe lands northeast or northwest of (i.e., northerly in general relation to) the bound or point described. 23 So.2d 176.
In the present instance, the description in the Amendment itself, reasonably construed in conjunction with the territorial limits of New Orleans, shows that the term `north of Florida Avenue' was intended to be used in the latter sense....
243 So.2d 809 at 815.
Based upon the clearly distinguishing factors between the present case and Sewerage and Water Board, we reject Larkin's argument Factually, Sewerage and Water Board involved the interpretation of a Constitutional Amendment as it applied to the City of New Orleans, rather than a building restriction which applied to an individual plat of land. Therefore, the specific legal standards utilized in analyzing the extent of a building restriction were inapplicable to the case. Moreover, we find that the holding of Sewerage and Water Board was clearly limited to the facts of that case and therefore did not establish, as Larkin argues, a rule of law to be applied in every situation. In fact, the court's mention of the general rule that "north" generally means "due north" is detrimental to Larkin's position.
Accordingly, Larkin's reliance on Sewerage and Water Board in support of its position is misplaced. In light of this determination, it is unnecessary that we address Larkin's argument relating to proffered exhibit D-5.
Moreover, clearly an ambiguity exists in the restriction language. Indeed, the phrases "[a]s to that portion of Haynesville Tract `C' that lies west" and "[a]s to that portion of Haynesville Tract `C' that lies south" are susceptible to more than one interpretation, i.e., whether or not to include only those portions of Tract C which lie "due" south or west of the Larkin Tract. Even if we were to agree that the terms of the building restrictions are clear and unambiguous, we find that to interpret them as Larkin suggests leads to absurd consequences. This interpretation would unreasonably restrict plaintiffs' use of the property or, as the trial court noted, would result in locating it even closer to the Larkin tract.
Because of the obvious uncertainty in the language, the trial court considered parol evidence to clarify the ambiguity and to show the intent of the parties. Although the court agreed that the shape of the extension should be in the shape of an arc, it found that there existed an ambiguity in the extent of the restrictions, as the parties could not have agreed to both the 50-foot and 250-foot arcs. After observing that Larkin's interpretation of the restrictions allowed for movement of the building eastward, beyond the 250-foot arc but within the lot boundary to a location closer to Larkin's property, the court resolved the ambiguity in favor of the 50-foot arc shown in Appendix A. The court made this determination based upon two conclusions, namely, that the parties intended that the 50-foot restriction govern the location of the medical building and that pursuant to the provisions of La. C.C. art. 783, the least restrictive interpretation of the building restrictions was the 50-foot arc.
The court also considered evidence regarding the intent of the parties in its ultimate determination. Loy Moore ("Moore"), Haynesville's representative who negotiated the building restrictions, testified that the parties never agreed to the 250-foot arc because that large a restriction would have severely limited Haynesville's plan to build an office building on its land. In fact, Moore explained *576 that he had earlier declined Larkin's request for a 250-foot building restriction around the entire border of the lot for that very reason. Moore agreed that the 50-foot arc was what the parties intended.
Tim Larkin, President of Larkin Development, corroborated Moore's testimony regarding Larkin's attempt to obtain a 250-foot restriction around the entire border. Nevertheless, Larkin maintained that the parties intended the 250-foot arc as shown in Appendix A to apply.
After hearing this evidence, the court accepted Moore's testimony that the parties intended the 50-foot restriction based upon Haynesville's rejection of Larkin's attempt to obtain a 250-foot restriction around the entire boundary of the property. Because, as discussed above, the theory proposed by Larkin at trial allowed for movement of the building to a location detrimental to Larkin, the court rejected Larkin's claim that the parties intended the 250-foot arc restriction as set forth in Appendix A.
We can discern no error in the trial court's conclusions. Regarding the issue of intent, we find the court's resolution of the conflicting evidence and testimony reasonable, in light of the record as a whole. Harper v. Garcia, 32,142 (La.App. 2d Cir.09/18/99), 739 So.2d 996. Clearly, Moore's testimony supports the conclusion that the parties intended the limited restriction, and it is obvious that only a 250-foot restriction around the entire boundary, which was rejected by Haynesville, would have accomplished Larkin's goal of keeping the building as far as possible from his lot. Likewise, we agree that the ambiguity in Larkin's interpretation of the extent of the restrictions, i.e., the overlapping arcs, is, pursuant to La. C.C. art. 783, appropriately resolved in favor of the least restrictive use of the property.[3] With the evidence showing that Larkin's interpretation of the restrictions would result either in a placement of the building closer to Larkin's lot or a severely limited use of the property by plaintiffs, the obvious, least restrictive interpretation of the restriction is the 50-foot arc. Finding no abuse of discretion, we affirm the trial court's judgment at Larkin's costs.
AFFIRMED.
*577 
*578 
NOTES
[1] Plaintiff's expert, Desmond Sprawls ("Sprawls"), also testified that a possible interpretation of the restrictions would be to extend the 250-foot restriction south fifty feet. We find it unnecessary to discuss or include a diagram of Sprawls' third interpretation because plaintiffs solely rely on the pictorial interpretation set forth in Appendix B.
[2] Larkin has conceded in argument that if an ambiguity exists in the building restrictions, it cannot succeed on appeal.
[3] Likewise, because Larkin's attorney prepared the building restrictions in this case, any ambiguity which exists in the restriction language must be construed against Larkin, the party which prepared the document. Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984); Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La.App. 2d Cir.1990).