880 So.2d 875 (2004)
AQUA POOL RENOVATIONS, INC.
v.
PARADISE MANOR COMMUNITY CLUB, INC.
No. 04-CA-119.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 2004.
*877 Stephen D. Marx, Metairie, LA, for Plaintiff/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
*878 WALTER J. ROTHSCHILD, Judge.
Aqua Pool Renovations, Inc. ("Aqua Pool") is a local company that is in the business of renovating residential and commercial swimming pools. The two owners of Aqua Pool are Terry Lonatro and Johnny Daniel. Paradise Manor Community Club, Inc. ("Paradise Manor") is a recreational club located in River Ridge, Louisiana.
On March 20, 2001, Aqua Pool and Paradise Manor entered into a written contract which provided that Aqua Pool would perform certain pool renovations at Paradise Manor for the price of $50,747. The contract consists of six pages prepared by Aqua Pool, with each page discussing a different phase of the project and its cost, and 3 pages prepared by Paradise Manor's attorney.
Barry Breaux, who was a member of Paradise Manor's board of directors in 2001, was authorized by the board to sign the contract after discussing the contract with the board and receiving their approval. Mr. Breaux also oversaw the renovation project for Paradise Manor. The contract was signed by Terry Lonatro on behalf of Aqua Pool. According to the contract, the renovations were to be completed by May 3, 2001 or Aqua Pool would be penalized $500 per day. The contract also provides that all change orders must be in writing.
According to Aqua Pool, several unanticipated issues and problems arose during the project, and Mr. Breaux authorized Aqua Pool to perform additional work to resolve these problems, knowing that this work would be done at additional cost to Paradise Manor. Paradise Manor asserts that Mr. Breaux did not authorize Aqua Pool to perform additional work outside the terms of the original contract, and it did not have the money to pay for any extra work.
On May 3, 2001, which was the day that the renovations were to be completed, Mr. Breaux gave Mr. Lonatro a list of items which he believed were required to be done before the contract was satisfied. Paradise Manor withheld $3,000 of the contract price from Aqua Pool, because they believed that all of the work had not yet been completed. Aqua Pool disagreed and believed that the work required under the contract was finished.
On November 29, 2001, Aqua Pool filed suit against Paradise Manor in the 24th Judicial District Court, asserting that Paradise Manor owed it $8,832, which includes $3,000 of the original contract price, $3,974 for additional labor and supplies authorized by Mr. Breaux, and $1,858 for additional equipment. In its petition, Aqua Pool also asserts that it is entitled to attorney fees from Paradise Manor, pursuant to the contract between the parties.
On January 4, 2002, Paradise Manor filed an answer, stating that it did not authorize any additional work and that Aqua Pool was not entitled to the final $3,000 of the contract price, because it breached the contract by failing to complete the work by the contract deadline. Paradise Manor also filed a reconventional demand, asserting that Aqua Pool did not remove all of the debris and equipment on time, did not complete the job to Paradise Manor's satisfaction, did not complete the "punch list" items, did not obtain written change orders as required by the contract, and did not honor its one-year warranty against defects. Accordingly, Paradise Manor argues that Aqua Pool is liable under the contract for penalties of $500 per day since the contractual deadline of May 3, 2001 and for the additional costs of completing the renovations that were not properly done by Aqua Pool, including repairing and replacing tiles on the bottom *879 of the pool and fixing cracks in the concrete decking that were caused by Aqua Pool's failure to properly place expansion joints.
Trial of this matter was held on February 10, 11, and 13, 2003. On May 27, 2003, the trial judge signed a judgment 1) awarding $1,920.00 to Aqua Pool;[1] 2) ordering a representative from each party mutually to select an unrelated third party to inspect the pool and determine whether it has an air leak and, if so, whether or not it was caused by Aqua Pool during the pool renovations and, if so, the cost to repair the leak; 3) denying Aqua Pool's request for contractual attorney fees; and 4) ordering each party to bear their own costs. It is from this judgment that Aqua Pool appeals. We note that Paradise Manor did not appeal any portion of the judgment and has not filed a brief with this Court.

DISCUSSION
In its first assignment of error, Aqua Pool argues that the trial court erred in finding that the "extras" were not authorized. Aqua Pool agrees that the trial court correctly found that the extras were not included in the original contract. However, it argues that the additional work that they performed was done pursuant to verbal modifications to the contract, which were approved by Mr. Breaux.
A court of appeal may not set aside factual findings of the trial court unless they are manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Albert K. Newlin, Inc. v. Morris, 00-1564 (La.App. 3 Cir. 2/28/01), 782 So.2d 1116, 1119, writ denied, 01-875 (La.5/25/01), 793 So.2d 164. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Schexnayder v. Exxon Pipeline Co., 01-1236 (La.App. 5 Cir. 3/13/02), 815 So.2d 156, 159.
At trial, John Jorgensen, who was the president of Paradise Manor in 2001, testified that the board approved Aqua Pool's bid for the renovation project and Paradise Manor got a loan for that amount, but there was no money in the budget for additional work. Mr. Jorgensen stated that the board designated Mr. Breaux to run this project, but the board had to approve any additional work or changes. He believes that the board would have agreed to some of the extra work if they had been asked. However, because no extras were approved by the board and no written change orders were signed, he does not believe that Aqua Pool is entitled to payment for the additional work. Further, he believes that Aqua Pool decided to seek payment for extras only because the relationship between Aqua Pool and Paradise Manor went bad.
Terry Lonatro, a principal of Aqua Pool, testified that no written change orders were signed, but Mr. Breaux authorized all of the additional work before it was done, and he never said that he had to discuss any changes or additional work with the board. Barry Breaux testified that he was not authorized to sign change orders or *880 spend additional money on the renovations unless the board approved it.
A written contract is the law between the parties, and the parties will be held to full performance of the obligations flowing from their contract. LSA-C.C. art. 1983; Wisinger v. Casten, 550 So.2d 685, 687 (La.App. 2 Cir.1989). However, the law is clear that written contracts may be modified by oral contracts and the conduct of the parties, even when the written contract contains a provision that change orders must be in writing. Rhodes Steel Buildings, Inc. v. Walker Construction Company, 35,917 (La.App. 2 Cir. 4/3/02), 813 So.2d 1171, 1177. Modification of a written agreement can be presumed by silence, inaction, or implication. Professional Const. Services, Inc. v. Lee M. Marcello Contractor, Inc., 550 So.2d 968, 971 (La.App. 5 Cir.1989), writ denied, 556 So.2d 36 (La.1990).
In the present case, the trial judge found that, although modifications do not always have to be in writing, he did not believe that there was a "meeting of the minds" between Mr. Breaux and Aqua Pool regarding modification of the contract to add extras. The issue before this Court is whether Paradise Manor, through their representative, Mr. Breaux, agreed to the additional work verbally or by actions, inactions, or silence, and therefore, whether Aqua Pool is entitled to payment for the extra work performed. In order to make this determination, we must consider each extra claimed by Aqua Pool and the testimony regarding this additional work.

1. Re-piping of intake manifold
The first extra claimed by Aqua Pool is installation of new plumbing pipes into and out of the manifold in the pumping system. Mr. Lonatro testified that during the project, he noticed that the pipes leading up to the manifold were failing due to age and needed to be re-plumbed and that some valves needed to be replaced. According to Mr. Lonatro, Mr. Breaux asked him what the cost would be for this work and he told him that it would be $800-$1,000. Mr. Lonatro testified that Mr. Breaux then authorized the work. Aqua Pool introduced an email written by Mr. Breaux to Mr. Lonatro regarding what he believed was the best way to re-plumb the intake manifold. Before Mr. Lonatro received the email, he had already installed new piping, but he changed it again to comply with Mr. Breaux's instructions set forth in the email. Mr. Breaux testified that no one from Aqua Pool ever discussed that there would be extra charges for installing the new pipes to and from the manifold, and no one asked him to sign a change order for this work.
It is clear that the contract does not include re-piping of the intake manifold. This was extra work that was done by Aqua Pool when they discovered the condition of the piping leading to the manifold. Although a written change order was not signed, as stated above, a written contract can be modified by oral agreements, silence, or inaction. Mr. Breaux obviously knew that this additional work was being performed, as evidenced by his email to Mr. Lonatro with instructions regarding the work. Further, Mr. Jorgensen testified that Mr. Breaux informed the board that the manifold piping was being replaced. There is no evidence or indication in the record that Mr. Breaux opposed the changing of the piping due to Paradise Manor's inability to pay additional fees, particularly considering the fact that Mr. Breaux specified how he wanted the new piping configured. It is unreasonable to believe that Aqua Pool would not charge Paradise Manor to purchase and replace additional piping that was not included in the original contract.
*881 In this case, the actions of the parties establish that the written contract was indeed orally modified to include this additional work. Accordingly, we find that the trial court's conclusion that Aqua Pool is not entitled to payment for this work was clearly wrong and must be reversed.
Randy Farrell, who was accepted as an expert in pool construction, pool price estimation, and pool electrical work, testified that $750-$1,200 would be a reasonable cost for installing new manifold piping and valves. He also testified that if manifold piping is found to be inadequate and needs to be changed, additional charges are justified. Aqua Pool seeks $1,000 for this work. Considering the testimony and evidence before us, we find that Aqua Pool's claim is reasonable, and it is entitled to $1,000. Accordingly, we reverse the trial court's judgment insofar as it denied payment for this work and, we award $1,000 to Aqua Pool.

2. Light Niches
The second "extra" claimed by Aqua Pool is compensation for three light niches. The contract provides that Aqua Pool was to install three new lights and conduit to replace old deck boxes. When the pool was drained and the lights were removed, Aqua Pool noticed that there were no niches. According to Mr. Lonatro, a "niche" is a stainless steel bowl that is set into the pool's shell and the light sits in the niche, which is water-tight, to keep water from seeping out of the pool through the shell that the light sits in.
Mr. Farrell testified that niches were not used in all pools when Paradise Manor's pool was built in 1958, but they are a code requirement now. He further stated that in doing a renovation job, if is it discovered that niches are not in place, it is a code requirement to install them.
Mr. Lonatro testified that Mr. Breaux was present when he discovered that there were no niches in Paradise Manor's pool. He showed the problem to Mr. Breaux and strongly recommended installing niches because water can eventually leak through the wall without them. According to Mr. Lonatro, Mr. Breaux agreed that niches should be installed and authorized the work. Aqua Pool agreed to install the niches for $500 per niche, which was close to cost. At trial, Paradise Manor stipulated that $1,500 for installation of three niches was reasonable, but they argued that they did not owe this money because the work was not authorized.
Mr. Breaux testified that he was not informed by Aqua Pool that they were going to install three niches. Although he admitted in his deposition that he knew they were going to install niches, at trial he explained his deposition answer by stating that he did not know the difference between a light and a niche at the time of the deposition. He testified that niches were never discussed as an extra during the project, and he believed that they should have been included as part of the installation of the lights, which was included in the contract.
Mr. Lonatro has been involved in pool building and renovation since 1981, and he testified that he has renovated 550-600 pools within the last five years. Considering his experience in this industry, he should have known that niches were not a code requirement in 1958 when Paradise Manor's pool was built and that there was a good possibility that niches would need to be installed during this renovation. When submitting its bid for this job and negotiating the contract, Aqua Pool should have informed Paradise Manor of the possibility that niches may be needed and the possible additional cost.
*882 Legal agreements have the effect of law upon the parties, and the parties shall be held to full performance of the obligations flowing therefrom. L & A Contracting Company, Inc. v. Ram Industrial Coatings, Inc., 99-0354 (La.App. 1 Cir. 6/23/00), 762 So.2d 1223, 1230, writ denied, 00-2232 (La.11/13/00), 775 So.2d 438. Contracts must be performed in good faith, and may only be modified by mutual consent. Id. at 1232.
Aqua Pool's representative, Mr. Lonatro, signed the contract which provided that Aqua Pool would install three lights in the pool. Pursuant to the contract, Aqua Pool was responsible for providing all of the labor, materials, and equipment necessary to accomplish its work, including installation of the lights. Accordingly, we find that the niches were part of the materials necessary to install the lights and were, therefore, included under the contract.
Considering the testimony and evidence in this matter, we find that Aqua Pool is not entitled to additional compensation for installing three niches, because this cost was included, or should have been included, in the original contract. Accordingly, we affirm the portion of the trial court judgment denying Aqua Pool's request for payment for the niches.

3. Concrete Decking
According to Mr. Lonatro, he suggested to Mr. Breaux that extra concrete should be poured in order to widen the narrow decking and keep uniformity around the perimeter of the pool. He told Mr. Breaux that it would cost $2.50 per square foot for this extra decking and that they needed 300-400 square feet. Mr. Lonatro testified that Mr. Breaux authorized this work. Aqua Pool contends that it poured 355 square feet of additional decking. Mr. Farrell testified that the average cost for concrete decking is $6-$8 per square foot.
Mr. Breaux testified that he measured to determine how much additional decking was poured by Aqua Pool, and it was only 25.8 square feet. He stated that Aqua pool could not possibly have added 300-400 square feet.
It is clear that Mr. Breaux knew that additional decking was being put in by Aqua Pool. The actions of the parties show that the contract was orally modified to allow this additional work. Considering the record before us, we find that Aqua Pool is entitled to payment for this additional work, but only at the cost quoted by Mr. Lonatro to Mr. Breaux, $2.50 per square foot.
The party asserting modification of an obligation must prove by a preponderance of the evidence facts or acts giving rise to the modification. LSA-C.C. art. 1831; L & A Contracting Company, Inc. v. Ram Industrial Coatings, Inc., supra at 1233. There was conflicting testimony as to the amount of additional decking that was poured. According to Aqua Pool, 355 square feet of additional decking was poured, whereas Mr. Breaux stated that it was only 25.8 square feet.
Although we find that Aqua Pool established by a preponderance of the evidence that the contract was orally modified to include additional decking, we do not find that Aqua Pool proved by a preponderance of the evidence that 355 square feet of additional decking was poured. Therefore, we conclude that Aqua Pool is only entitled to payment for 25.8 square feet of additional decking. Accordingly, we reverse the trial court's judgment insofar as it did not allow any compensation for the additional decking, and we award Aqua Pool $2.50 per square foot for 25.8 square feet of additional decking, for a total of $64.50.

*883 4. The Baby Pool

Aqua Pool claims that it is entitled to $1,425 for additional work performed on the baby pool. According to Mr. Daniel, when the baby pool was drained and the old plaster was jackhammered out, they discovered that the piping from the equipment room to the baby pool was made of copper. He stated that there was no way to tell that there were copper pipes under the baby pool before the main drain was jackhammered out. He indicated that copper piping is outdated, and Mr. Breaux authorized them to change it. He testified that Mr. Breaux knew they were changing the copper piping to PVC because he was there when it was done.
Mr. Lonatro testified that it was Mr. Breaux's decision to change the piping under the baby pool. They changed the return line and main drain line, installed the water feature, and ran PVC lines back to the equipment room.
Mr. Breaux testified that he did not authorize this or any other additional work. However, he was at the site almost every day and was certainly aware that this additional work was being done. There is no evidence to indicate that he told anyone not to do the work or disapproved. As stated above, inaction or silence can establish modifications to a contract.
Considering the testimony and evidence regarding the additional work on the baby pool, we find that that trial court was manifestly erroneous in failing to find that the contract was modified to allow this additional work. We conclude that Aqua Pool is entitled to $1,425, which Paradise Manor stipulated was a reasonable charge for the additional work performed on the baby pool. Accordingly, we reverse the trial court judgment insofar as it denied recovery to Aqua Pool for this additional work, and we award $1,425 to Aqua Pool.

5. Miscellaneous Valves and Equipment
Aqua Pool claims that it is entitled to $640 for the following items: 1) four Jandy valves; 2) one 3-inch valve; 3) one new chlorinator; and 4) installation of new equipment. Mr. Lonatro testified that they installed new valves on the filtration system, a new pump, and a new chlorinator. He stated that Mr. Breaux authorized these extras. Mr. Farrell testified that the charges claimed by Aqua Pool for the pump, valves, chlorinator, and setting equipment were not unreasonable.
Considering the testimony on this issue, we find that Aqua Pool is entitled to $640 for these items, and we reverse the trial court judgment insofar as it denied Aqua Pool this award.
In its second assignment of error, Aqua Pool argues that the trial court erred in awarding Paradise Manor money to repair the cracks in the concrete and for the electrician's bill. The trial court awarded Paradise Manor an offset of $750 to repair the cracks in the pool decking and $710 for the electrician's bill that was paid by Paradise Manor.
Paradise Manor argues that there are cracks in the concrete decking that were caused by Aqua Pool's defective work. Aqua Pool responds that the cracks were less than 1/16 of an inch wide, very minor, and inconsequential. In support of its position, Aqua Pool cites testimony from Paradise Manor's expert, Ted Ladner, who was accepted as an expert in pool construction and renovation, wherein he stated that decks in New Orleans will crack sooner or later. Aqua Pool also notes the testimony of Mr. Farrell, wherein he indicated that it is common for concrete decking to crack. Aqua Pool argues that Paradise Manor is not entitled to an offset for *884 cracks because cracking is common and expected.
Louisiana law implies that a contractor will complete the work in a good and workmanlike manner and that it will be free from defects in workmanship or materials. Mount Mariah Baptist Church, Inc. v. Pannell's Associated Electric, Inc., 36,361 (La.App. 2 Cir. 12/20/02), 835 So.2d 880, 887, writ denied, 03-555 (La.5/2/03), 842 So.2d 1101. There was a great deal of testimony regarding expansion joints and control joints and their ability to prevent or minimize cracking.
Randy Farrell testified that placing expansion joints every 16 feet does not eliminate cracks, but it does ease the cracks and prevent some cracking. He recommended placing a control joint every eight feet. Terry Lonatro agreed that expansion joints should be placed every 16 feet and control joints every eight feet.
Ted Ladner testified that he inspected Paradise Manor's pool and found that there was an insufficient amount of expansion joints and that there were cracks exactly where expansion joints should have been placed. He saw cracks in two places which he believes would cost $2,000-$4,000 to repair.
Although expansion and control joints cannot guarantee that cracking will not occur, the testimony established that these joints can minimize and prevent some cracking. According to Mr. Ladner, Aqua Pool did not place expansion joints every 16 feet, as recommended by Mr. Lonatro and Mr. Farrell.
The trial court awarded a $750 offset to Paradise Manor due to the cracks. Apparently, the trial court believed that the cracks were caused by Aqua Pool's work or failure to properly place expansion joints in the decking. We have considered the testimony and evidence, including the photographs of the cracks, and we conclude that this finding of the trial court was not clearly wrong or manifestly erroneous. Accordingly, we affirm the award of a $750 offset for the cracks in the decking.
We also affirm the trial court's award of a $710 offset to Paradise Manor for a payment made to an electrician. Aqua Pool argues that the electrical work was not included in the contract and, therefore, Paradise Manor was responsible for the electrician's bill, because the contract states that Aqua Pool is not responsible for electrical systems. Paradise Manor argues that Aqua Pool was required to pay for the electrical work, because several pages of the contract provide, "Price quoted consists of all labor, material and equipment necessary for the above specifications." Paradise Manor contends that the work of an electrical subcontractor should have been included in the labor necessary for installation of the lights.
Interpretation of a contract is the determination of the common intent of the parties. Whitaker Construction Company, Inc. v. Larkin Development Corporation, 34,297 (La.App. 2 Cir. 12/6/00), 775 So.2d 571, 574, writ denied, 01-68 (La.3/16/01), 787 So.2d 312. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Id.
In the present case, the clear wording of the contract indicates that all labor, materials, and equipment necessary for the work is included in the contract price. The electrician's work is labor that is necessary for installation of the lights, including re-wiring and connecting the niches to the electrical junction boxes. We find Aqua Pool's argument that it is not *885 responsible for electrical systems to be unpersuasive, because payment for the electrical services required for installation of the lights does not render Aqua Pool "responsible for electrical systems," and is not excluded under the contract. Accordingly, we find no error in the trial court's award of a $710 offset to Paradise Manor for the electrician's payment.
In its third assignment of error, Aqua Pool argues that the trial court erred in ordering the parties to select an unrelated third party to determine whether or not the air leak complained of exists and, if so, whether or not it was caused by Aqua Pool. Aqua Pool asserts that Paradise Manor did not carry its burden of proving by a preponderance of the evidence that Aqua Pool's actions during the renovation caused an air leak, and no further discovery or inspection may be performed after trial.
There was testimony about Paradise Manor's claims of an air leak. Mr. Lonatro testified that there was a leak in the main drain line prior to commencement of Aqua Pool's work, and there was a slight air leak when they finished the renovations. He stated that it was not part of the contract for Aqua Pool to change the main pool drain line, and the small air leak was not caused by any work that Aqua Pool performed. He testified that a leak detection company came out and found a very small air leak that was probably in the line that was encapsulated in the pool's shell, but it was nothing to be concerned about and would not affect the performance of the pump or filtration system.
Mr. Ladner testified that when he inspected the pool, he saw bubbles, which means that there is air in the system and the pump must run longer in order to clean and filter the water. He stated that it is not acceptable to leave an air leak in the system.
Paradise Manor stipulated that the source of the air leak is in the main drain pipe. Aqua Pool argues that it did not do any work on the main drain, but Paradise Manor responds that Aqua Pool's work still caused the leak.
Mr. Breaux admitted that he wrote a letter to Aqua Pool thanking them for fixing the air leak in the main drain, because he thought it was fixed. However, he noticed the next day that it was still leaking.
At the end of trial, the trial judge stated,
.... there was not sufficient testimony to establish whether or not there was a leak in that line prior to the work commencing. There is testimony there was a leak after.
I understand that there was a fax thanking you for fixing it, but we had more than adequate testimony that really it wasn't fixed. That seems to have been a mistake or a problem by your company and wasn't straightened out while you were there and had the opportunity, and I can only go by theby what's put in front of me. So that has to be fixed.
If Paradise Manor does not want you on their grounds, then you will both meet and mutually choose someone to do it. The gentleman that testified here in court gave some really vague numbers as to maybe twelve hundred dollars ($1200) to test and twenty-nine hundred dollars ($2900) to fix. He was veryhe was not specific and I don't feel comfortable using those numbers.
I want someone who does it for a living to go inand I know he does, but he washe was really speaking off the top of his head. If the record will reflect I kind of asked him at that point could he get more specific, and I took notes and I even think I said orallyI *886 recited what he had said "twelve hundred dollars to test and twenty-nine hundred dollars to fix"; so, that's got to be done. I think that that's the pool company's fault, they're responsible, so they're going to have to fix that.
Although the trial judge's comments at the end of trial are not part of the judgment, it reveals that he apparently believed that an air leak was caused by Aqua Pool. However, in the signed judgment, he ordered an unrelated third party to inspect the pool in order to determine for certain whether there was an air leak and, if so, whether it was caused by Aqua Pool during the renovation.
LSA-C.C.P. arts. 1631 and 1632 give discretion to the trial judge to control the order of trial and procedure in the interest of justice. Mancuso v. Union Carbide Corporation, 99-1273 (La.App. 5 Cir. 4/25/00), 762 So.2d 79, 81. The decision to hold open or reopen a case for the production of additional evidence rests within the discretion of the trial judge and will not be disturbed absent abuse of that discretion. deBen v. Bobby Collins Seafood, Inc., 00-306 (La.App. 5 Cir. 10/31/00), 772 So.2d 266, 267-268; See also Adams v. Allstate Insurance Co., 01-1244 (La.App. 5 Cir. 2/26/02), 809 So.2d 1169.
Considering the record in this case, we cannot say that the trial judge abused his discretion when he left the case open for additional evidence regarding the possible air leak. Accordingly, this assignment of error is without merit.
In its fourth assignment of error, Aqua Pool argues that the trial court erred in denying its request for attorney fees. The trial judge denied Aqua Pool's request for attorney fees, because he found that the extras were not due and owing. Generally, Louisiana law does not permit recovery of attorney fees in the absence of a contractual agreement by the parties to pay attorney fees or a statutory provision allowing recovery. Kinsinger v. Taco Tico, Inc., 03-622 (La.App. 5 Cir. 11/12/03), 861 So.2d 669, 671-672.
The contract in this case contains the following provision:
Should this account be placed in the hands of an attorney for collection or handling, customer agrees to pay all attorney's fees, court costs, in addition to the outstanding balance due plus all interest accrued from completion of job.
In this case, Aqua Pool sued Paradise Manor for collection of $3,000, which was the outstanding balance due on the contract, and the trial court found that it was entitled to this money. In accordance with the contract provisions, we find that Aqua Pool is entitled to attorney fees for collection and handling of the case as it pertains to collection of the $3,000. The contract does not cover the extras and, therefore, attorney fees incurred for recovery of payment for the extras and the handling of other issues in this litigation are not recoverable under the contract.
Aqua Pool submitted an itemized statement indicating that attorney fees that it incurred in this litigation totaled $6,457.50. Considering the work performed and the entire record, we find that approximately one-third of the legal work done on behalf of Aqua Pool was performed in furtherance of collecting the $3,000 due on the contract. Therefore, we find that reasonable attorney fees for collection of the outstanding balance of the contract are one-third of the total fees. Accordingly, we award $2,152.50 in attorney fees to Aqua Pool.

DECREE
For the reasons set forth above, we reverse the trial court's judgment insofar as it denied recovery to Aqua Pool for: 1) *887 repiping of the intake manifold; 2) 25.8 square feet of additional concrete decking; 3) work on the baby pool; and 4) miscellaneous and equipment, and we award Aqua Pool $3,129.50 for this additional work and materials. We also award attorney fees to Aqua Pool in the amount of $2,152.50. In all other respects, the trial court's judgment is affirmed. Costs of this appeal are to be borne by the appellee, Paradise Manor.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] At the conclusion of the trial, the trial judge found that the renovations were completed timely and that Aqua Pool was entitled to the remaining $3,000 of the contract price. The trial judge did not award Aqua Pool any money for the extra work performed, except $380 for installation of a pump. The trial judge also found that Paradise Manor was entitled to a credit for $710 that it paid to an electrician and for $750 to fix cracks in the decking. Accordingly, the amount awarded to Aqua Pool apparently represents the $3,380 for the remainder for the contract price and the pump, minus the $1,460 credit for the electrician's payment and the cracks in the decking.